ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

INDIANA AND ILLINOIS CENTRAL RAILWAY COMPANY.

1. GRANT—*of land can only be by deed or contract.* Where a railway company, in conveying a tract of land owned by it, reserved a strip of land on each side of its track, and another strip crossing the first, for railroad purposes, upon which another company, some sixteen years afterwards, laid the track of its road by permission, it was held that this reservation passed no title, legal or equitable, to the latter company, as to any of the strip not actually occupied by it.

2. POSSESSION—*extent, when taken without evidence of title.* Where a person claims possession of real estate without a deed or other instrument in writing calling for boundaries, his possession will not extend beyond what he has inclosed or actually occupies. Where a railway company constructs its track over the land of another, and erects buildings thereon, without any written evidence of title, and does not inclose the same, its possession will be limited to the ground actually occupied.

3. DEDICATION—*to railway company, by plat.* The statute providing that streets, alleys and public grounds so designated on a town plat, when properly certified, etc., shall operate as a conveyance in fee to the public, does not apply in favor of individuals or private corporations. Therefore, if a deed for land reserves a strip of land for railroad purposes, according to a diagram which shows the name of the railway company, it will not operate as a conveyance of the strip to the company, or a dedication. Such a reservation, if it states that it, or any portion of it, was for the sole use of the company, might possibly operate as a declaration of a trust enforcible in equity, but this point is not decided.

4. EMINENT DOMAIN—*law in respect to railroads construed.* The general railroad law authorizing the purchase of lands for right of way, etc., the acceptance of donations for the same purposes, and giving the right to take possession and use such lands, does not mean that, if an owner permits a railroad company to enter, pending litigation to ascertain the damages, or without litigation, he will lose not only his damages, but also the land. The owner will lose none of his rights by permitting the company to take possession without grant or condemnation.

5. CONVEYANCE—*when reservation enures to third party.* A reservation in a conveyance of land may operate in favor of third persons who have existing rights at the time it is made, but not to one who has no present right, legal or equitable, to the part reserved.

APPEAL from the Circuit Court of Douglas county; the Hon. OLIVER L. DAVIS, Judge, presiding.

Mr. GEO. W. WALL, for the appellant.

Mr. HENRY CRAWFORD, and Mr. THOMAS H. MACOUGHTRY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Prior to the year 1856, appellant was the owner of section 34, township 16 north, range 8 east of the 3d principal meridian, then in Coles, but now in Douglas county, in this State. Some time during that year, E. S. Terry, W. P. Mulhollen and P. S. Cornelius contracted with the company for the purchase of one hundred and sixty acres of this land, on which to lay off and locate the town of Tuscola. When this contract was entered into, appellant had its road constructed, and was operating it through the tract thus contracted to be sold, north and south. Appellee's road had also been surveyed east and

west through this land, and crossed appellant's road at nearly right angles. In making the sale, appellant made a reservation from the sale, of the right of way for railroads and railroad purposes, as shown by a diagram. The deed of conveyance subsequently, on the 13th day of January, 1859, made to Terry and his associates, made the same reservation, and referred to the diagram as a part of the deed.

Terry, Mulhollen and Cornelius subsequently, when they made and recorded a plat of the town, attached to it this memorandum:

"The spaces on the annexed map severally marked C, D, E and F, and the small spaces on the 'Y's' or curves, inclosed by dotted red lines and severally marked a, b, c, d and e, are not intended to be dedicated, but are reserved by the proprietors. The one marked 'C,' however, will be dedicated for a court house, if required for such purpose within five years. The strip of land lying on the Illinois Central Railroad, 100 feet wide on the west side, and 200 feet on the east side of said road, and the street (50 feet wide,) adjoining the same on the east, also the strip lying on the line of the Indiana and Illinois Central railway, 100 feet on each side of the same, including the two streets, (each 50 feet wide,) adjoining said strips on the north and south, and also, the land lying within the 'Y's' or curves, were and are reserved by the Illinois Central Railroad Company, by their contract with the proprietors, for right of way for railroad and railroad purposes, and are not, therefore, in anywise dedicated by the said parties."

This memorandum shows the reservation, perhaps, more accurately than any other paper, unless it be the diagram accompanying appellant's deed to Terry and his associates. The original contract for the sale of the land, has been lost or destroyed by fire. Cornelius thinks that the agent of appellant, in making the agreement for the sale of the land, stated that the portion along the track of appellee was reserved for that road, but Terry seems to be confident that the agent made no such statement, but thinks he may have said appellee might want it in the future, as a reason for reserving the por-

tion of ground on each side of its surveyed line. But they both say they were not the agents of, or acting in any manner for, that company. Mulhollen is dead, and we are deprived of his recollection of the transaction.

Nothing seems to have been done towards constructing appellee's road, until about the month of March, 1872, when a correspondence occurred between the engineers of the two roads, as to the crossing by appellee over appellant's road. The crossing was put in, and curved tracks laid to the satisfaction of both parties, and the roads were operated at all times subsequently.

It appears that Ervin Davis & Co. owned an elevator for shipping grain, adjoining the one hundred foot strip south of appellee's track, and east of the crossing of the two roads. In the latter part of the winter or early spring of 1875, appellant commenced the construction of a switch from its road to connect with this elevator, for the purpose of shipping grain therefrom. This switch, so far as constructed, and if completed, would run over the one hundred feet of open space on the south side of appellee's road, but would not run over or disconnect appellee's road from the elevator.

Appellee, to prevent the construction of this switch, filed this bill, and obtained an injunction restraining appellant from proceeding to lay this track. On a hearing on bill, answer, exhibits and proofs, the court below rendered a decree making the injunction perpetual.

Under our Statute of Frauds, a contract to pass an interest in land for more than one year must, to be binding, be in writing, and signed by the party to be charged, or by some one duly authorized by him. But in this case, it is not even claimed that appellant, by resolution, verbal or written, ever conveyed, sold, or even agreed to sell or give to appellee, any of this ground. Nor is it shown that any agent authorized to act, or, in fact, any other agent, ever promised appellee, or any one of its agents or officers, to sell, give, or otherwise invest appellee with any right of any description to this strip of ground. It is true that appellant made no objection to appellee laying its

track and in crossing appellant's road.    The engineers of appellant concurred in making the crossing, but nothing more.    Then, on what principle can it be claimed that appellee has become invested with title to this strip of ground?    Not by deed, or written, or even verbal agreement, nor, so far as this record shows, even by actual possession by permission, or even tortiously.    The space over which appellant is constructing this track is vacant and unoccupied, and how can it be said that appellee, because it has its track north of this strip, is any more in possession than appellant, who has its track east of it?    Where persons claim possession without a deed or other instrument calling for boundaries, their possession does not extend beyond what they have inclosed, or actually occupy. Here, appellee does not claim under such an instrument, and can only be possessed of such portion as its buildings, tracks and switches occupy.

Appellant undoubtedly holds the fee.    It was granted to it by the government, and there is nothing showing that the fee has ever passed from it to any person.    So far from conveying it, the title in fee was reserved in appellant when the deed was made to Terry and his associates, and there is no claim that it has since been conveyed.    We can not, therefore, hold that appellant has parted with the fee to this strip.

It seems to be claimed that there was some kind of dedication made by appellant when it reserved these grounds from the conveyance to Terry and other grantees.    It is true, this strip, as platted by Terry and others, has marked on it, "Indiana and Illinois Central R. Way," but the other diagram appearing in the abstract, as attached to the deed as photographed, has marked on this strip, "Ill. Cent. R. R."    It is true, that some one seems to have written, with pencil, west of appellant's track, "Indiana and," but we can not regard this as a part of the diagram, as it does not appear as a part of the photograph, or to have been made by the person preparing it.    It, then, follows that there was not even the name of appellee's road marked on the diagram referred to in the reservation; but even if it did, how much of the strip would be

included, even if appellee's theory were conceded to be correct? The dimensions of the strip are not marked on the diagram; and if such a designation could be held to operate as a donation, how could it be held to be anything more than a strip of sufficient width for the track of appellee's road?

If the name of appellee's road was written in full on the strip designated in the diagram, how is it possible to hold that it could, under any known rule of law, operate as a conveyance of any, the least interest in the land, or its use, to appellee? The statute has provided that streets, alleys and public grounds so designated on a town plat, when it shall be properly certified, acknowledged and recorded, shall operate as a conveyance in fee to the public; but we are aware of no law that dispenses with a conveyance by the donor to a private person or a private corporation, or even to a public corporation, except by such a town plat made, certified, acknowledged and recorded. It is true, that public policy has sanctioned a donation of an easement for a public highway, without a conveyance or formal grant; but that is an exception to the rule that grants must be in writing, as required by the statute. An exception is never applied, by analogy, to other, dissimilar cases. It, therefore, follows that this reservation did not operate as a dedication of anything to appellee.

All reservations, unless otherwise expressed, operate in favor of the grantor. If the reservation had expressly stated that it or any portion was for the sole use of appellee, we are not prepared to hold that it would not have operated as the declaration of a trust in favor of appellee that would have been recognized and enforced in equity; but that question is not before us, and it is not decided; but we have no hesitation in saying that this reservation created no trust, nor did it operate to transfer any right to appellee. If, on the diagram, the names of both roads were marked, then who could say how much and what portion, even on appellee's theory, should be given to each company? Should the two hundred feet claimed be carried through the entire space, leaving appellant only the width of its track, and if not, why not, on the face of the dia-

gram? If not, then where is the line to be drawn to separate their grounds? Appellant could never have intended to confine its rights to the width of the track on which the rails are laid, nor can we believe that appellant's agents would unconditionally donate such a tract of land to a company situated as appellee then was. It would, of course, desire to have strong assurances that the road would be built; and appellee did not build its road at this point for nearly sixteen years afterwards.

It is claimed that the general railroad law authorized appellee to purchase, and, by voluntary donations and grants, to receive, and, by its officers, etc., to enter upon and take possession of, hold and use all such lands and real estate, etc., but not until the compensation to be made therefor, as agreed upon by the parties, or ascertained as therein provided, be paid to the owner, or deposited as therein provided, unless the consent of such owner be given to enter into possession. We do not understand this provision to mean that, if an owner permitted a railroad company to enter pending litigation to ascertain the damages to which he is entitled, or even without litigation, he would lose not only his damages, but his land. Such could never have been the intention of the General Assembly, and we can not so hold until it shall so direct in clear and unmistakable language. To so hold would perpetrate great wrong and flagrant injustice; but, even on the theory of appellee, there is no evidence that it was in possession when this track was being laid. It is true that it is alleged in the bill, and is not denied by the answer, but it is not proved as alleged.

It is said, and reference is made to adjudged cases to illustrate the principle, that a grantor may, by reservation, preserve the rights of others in the premises, such as the leases of tenants or existing rights of third persons; but these cases proceed upon the ground that there are, at the time, subsisting rights. But, in this case, it may be asked, what right did appellee have in these grounds when the reservation was made? It had no contract or agreement with appellant, or any one

else, so far as this record discloses, for any right of way over this ground. It had only surveyed the route and driven stakes, so far as could be seen. Hence, the cases referred to have no application to the case at bar.

If, as appellee contends, it entered into possession, laid tracks and erected buildings on this ground, under a license from appellant, whenever the latter shall attempt to prevent it from using such structures, then the question will arise, whether it is, or not, estopped by its acts; but that question is not before us, and on it we express no opinion. But we can see no reason why appellant should be restrained from using this ground, so long as it does not interfere with appellee in its use of the ground, so far as it has appropriated and is in the actual occupancy of the same. Until it shall endeavor to thus. obstruct appellee, the question as to what rights it has acquired, as against appellant, does not arise.

The decree of the court below is reversed, and the cause remanded with directions to dismiss the bill.

*Decree reversed.*