## OGLE *v.* BARKER

[No. 28,158.  Filed September 24, 1946.  Rehearing Denied
October 30, 1946.]

*Harker & Irwin,* of Frankfort, and *Clyde A. Rether-ford,* of Muncie, for appellant.

*Gruber & Morrison,* of Frankfort, for appellee.

YOUNG, J.—William H. Scott and Sarah J. Scott were married in 1895, and lived together as husband and wife until William H. Scott died on December 25, 1943. Sarah J. Scott died January 12, 1944. William H. Scott, prior to August 20, 1929, owned a farm in Clinton County, Indiana, and on that day he, his wife joining, conveyed the farm to his wife's nephew, Paul S. Barker. After the usual granting clause and description of the farm the following language appeared in the deed:

> "The grantors and each of them reserve in said above described real estate a life estate therein, for and during the natural lives of each of said grantors, and at the death of said grantors and each of them said real estate to go unto the grantee Paul S. Barker, conditioned, however, that said grantee pay in cash to Malcolm G. Ogle the sum of $4,000.00 in cash at the time he becomes twenty-one years of age, and in the event said Malcolm G. Ogle dies before he becomes twenty-one years old, then and in that case said real estate is to pass in fee simple unto the said grantee upon the death of both of said grantors."

After the execution of this deed, Mr. and Mrs. Scott continued to live on the farm. Paul Barker lived with them and operated the farm as a tenant and received a tenant's share of the proceeds of the farm. From the landlord's share grain, stock, household goods and other tangible personal property of the value of $2,975.25 was

accumulated and was on the farm when Mr. Scott died. This was at all times taxed in the name of Mr. Scott. Each year he scheduled and returned this property for taxation in his name. There was also accumulated from the landlord's share of the proceeds of the farm $1,910.75, which was in a checking account in the Farmers State Bank of Scircleville, Indiana, in the name of William H. Scott at the time of his death. All deposits in this checking account were made by deposit slips bearing his name alone and all checks on the account prior to Mr. Scott's death were written by him. It does not appear when the checking account in the Scircleville bank was opened, but it does appear that a pass book therefor was issued in the name of William H. Scott and that the account was opened by him in his sole name and remained in his sole name on the books and accounts of the bank until his death. Prior to his death, Mr. Scott talked with the president of the bank and told him he wanted the checking account to be in the name of "William H. Scott or Sarah J. Scott" and the president of the bank added to the name of William H. Scott on the pass book the words "or Sarah J. Scott." No change was ever made in the name in which this account appeared on any of the books of the bank, and at the time of Mr. Scott's death this account appeared on the books of the bank in the name of William H. Scott alone. The bank book was never delivered to Mrs. Scott; she never, prior to his death, wrote a check upon the account; she never made a deposit in the account, and it does not appear that she ever knew of the addition of her name on the pass book.

In addition to the tangible personal property on the farm and the checking account referred to there were outstanding at the time of Mr. Scott's death two certificates of deposit. One of these was in the name of

"William H. Scott or Sarah J. Scott" and one was payable to "William H. Scott or Sarah J. Scott or the survivor." There was also at the time of the death of Mr. Scott a United States Savings Bond in the sum of $100.00 in the name of "William H. Scott or Sarah J. Scott." There is no controversy between the parties as to the certificates of deposit or the savings bond and the decree will not be disturbed as to these items. The only controversies are as to the rights of the respective estates in and to the tangible property which was on the farm and as to the money in the checking account at the time of Mr. Scott's death.

The trial court found that each estate is entitled to one-half of the money in the checking account and to one-half of the tangible personal property on the farm. Appellant contends that all of the tangible personal property and the entire amount in the checking account was the property of Mr. Scott when he died and passed to his estate and to sustain this contention this appeal has been perfected.

The case, it seems to us, boils down to two questions, viz., the construction and effect of the reservation in the deed from Mr. and Mrs. Scott to Paul S. Barker, and whether or not Mr. Scott's statement to the president of the bank and the addition of Mrs. Scott's name upon the pass book served to transfer to her a half interest in the balance on deposit.

Appellant contends that the reservation in the deed to Paul S. Barker served to vest a life estate in Mr. Scott, and did not serve to vest in Mrs. Scott any estate in the farm during Mr. Scott's life. Appellees contend that the reservation in the deed carved out of the fee an estate for the lives of Mr. and Mrs. Scott and vested it in Mr. and Mrs. Scott together during their two lives, and that therefore the tangible personal property which accrued

from this joint life estate belonged to both of them, and that at the time of his death only half of same belonged to him and the other half belonged to her. Appellees contend as to the checking account that it accrued from the earnings on the farm and that such earnings belonged half and half to Mr. and Mrs. Scott, and even though deposited in his name alone half belonged to her. They take the further position that, even if this is not true, Mr. Scott's statement to the president of the bank that he wanted the checking account in the name of himself or Mrs. Scott, followed by the addition of Mrs. Scott's name upon the pass book, amounted to a gift and transfer of half of the account to Mrs. Scott, and that by virtue of this gift and *transfer one-half of the deposit belonged to her at the time of his death.

It will be observed that in the deed from Mr. and Mrs. Scott to Paul S. Barker there were no words of grant or conveyance to Mrs. Scott. That being true, then by virtue of the deed Mrs. Scott acquired no title because there can be no valid and operative conveyance of land without words of grant or alienation. *Legout* v. *Price* (1925), 318 Ill. 425, 149 N. E. 427, 429, 430 and cases cited; *Saunders* v. *Saunders* (1940), 373 Ill. 302, 26 N. E. (2d) 126. Property cannot be conveyed by reservation. 26 C. J. S. 452, Note 58. A reservation in a deed does not create title or enlarge the vested rights of a grantor; it merely reserves the specific interest named therein from the operation of the grant, and leaves that interest vested in the grantor to whom it belonged at and before the execution of the deed. 26 C. J. S. 453, Notes 74 to 77. *Village of Terrace Park* v. *Errett*, (C. C. A. 6) (1926), 12 F. (2d) 240; Thompson on Real Property, Permanent Ed. Vol. 6, § 3-458, p. 686.

It is a general rule that in a deed of conveyance a reservation by the owner is effective only in favor of the grantor, upon the theory that it holds back some interest from the estate conveyed and leaves it where it was. Ordinarily, such a reservation cannot vest an interest in one not theretofore having same unless words of grant are used. *Saunders* v. *Saunders, supra; Legout* v. *Price, supra; Johnson* v. *Bantock* (1865), 38 Ill. 111; *Du Bois* v. *Judy* (1920), 291 Ill. 340, 126 N. E. 104; *Beardslee v. New Berlin Light and Power Co.* (1912), 207 N. Y. 34, 100 N. E. 434; *Lemon* v. *Lemon* (1918), 273 Mo. 484, 201 S. W. 103; *White* v. *Marion,* (1908), 139 Ia. 479, 117 N. W. 254.

Applying the general rule to the facts in the case before us, simple reasoning compels the conclusion that after the deed from Mr. and Mrs. Scott to Paul S. Barker, Mrs. Scott had no greater interest in the farm conveyed than she had before the deed. Nothing was granted to her by the deed. Before the deed she held only an inchoate interest under the statute. By the deed an estate during her life and the life of her husband was reserved. Being merely reserved and not granted this estate for the duration of two lives did not pass to the grantee or the owner's wife, but remained where it was before the deed containing the reservation was executed, that is in Mr. Scott.

It has, however, been stated a number of times in different cases that a reservation of a life estate to each grantor in a deed of the husband's property, made by husband and wife, operates as an exception to the common law rule and is effective to vest in each of them a life estate. *Saunders* v. *Saunders, supra; Hall* v. *Meade* (1932), 244 Ky. 718, 51 S. W. (2d) 974; *White* v. *Willard* (1908), 232 Ill. 464, 83 N. E. 954; *Bullard* v. *Sued-*

*meier* (1920), 291 Ill. 400, 126 N. E. 117, 119; *Engel* v. *Ladewig* (1908), 153 Mich. 8, 116 N. W. 550; *Derham* v. *Hovey* (1917), 195 Mich. 243, 161 N. W. 883; 26 C. J. S. 445, § 138c.

Other cases have declined to make an exception of deeds by husband and wife where reservations are attempted to be made during the life of each and hold that a reservation by the grantor of an estate for the lives of himself and his wife does not vest a life estate in the wife, or in the husband and wife jointly, but that it reserves to the grantor, out of the thing granted, a life estate during his life and the life of his wife, and to the wife it reserves a life estate only in what she theretofore had, i. e., her inchoate right of dower or in some states her homestead rights. 26 C. J. S. 446, § 138c; *Lemon* v. *Lemon, supra; White* v. *Marion, supra; Meador* v. *Ward* (1924), 303 Mo. 176, 260 S. W. 106; *Gorham* v. *Daniels* (1851), 23 Vt. 600, 611.

The rule is stated in 26 C.J. S. 445-446, § 138c, in the following language:

> "A reservation, as such, must be to the grantor, or, in case of several grantors, to some or one of them; it cannot be made to a stranger to the deed. In some jurisdictions it is held that a grantor may reserve to himself or herself and his or her spouse a life estate to both, which will continue during the life of the survivor, without express words of grant from the one holding the legal title; but there is other authority which holds that a reservation by the grantor of a life estate for himself and his wife does not amount to a conveyance of a life estate to the wife, nor a transfer of a life estate to the husband and wife jointly, but that it reserves to the grantor, out of the thing granted, a life estate during his life and the life of his wife, and to the wife it reserves a life estate only in what she theretofore had, which was an inchoate right of dower and, perhaps, a homestead."

In the case of *Lemon* v. *Lemon, supra,* a husband, with his wife joining, conveyed real estate with a reservation that the husband and wife "are to have the use and profit of said place as long as both or either of them shall live." One of the questions considered by the court was what estate this deed left in the wife of the owner. The wife claimed a life estate in the land in dispute, averring that she acquired such estate by virtue of the reservation made in the deed. In deciding the question the court held that the reservation created no estate in the wife but that the life estate involved was an estate for the lives of the husband and wife which was vested in the husband and not in the wife. In the course of the discussion the court used the following language:

". . . But while she conveyed nothing by this deed (having disavowed her intent to convey any part of either of the two inchoate or contingent interests which she actually possessed) she took nothing by it. For by the terms of the deed she was not a grantee, but a grantor, and, moreover, the words of the deed are words of reservation, or of exception, and not words of grant. In order for defendant to take anything by this deed, she must either (a) have had the estate herself beforehand and reserved it or had it reserved for her in this grant, or (b) her husband (who actually had it) must have conveyed it to her by this deed. Since the first condition did not exist and the second never happened, defendant took nothing, and there was reserved for her nothing beyond what she had already. *Shelby* v. *Railroad,* 143 Ill. 385, 32 N. E. 438; *Illinois, etc., Railroad* v. *Indiana, etc., Railroad,* 85 Ill. 211. Her husband, who owned the land, reserved for himself therein the rents and profits and excepted therefrom a life estate, and attempted to reserve and except for defendant a similar estate and interest for her life. But unfortunately he reserved it in himself, and did not convey, nor has he ever conveyed, it to defendant. This estate *pur autre vie* remained in Joseph R. Lemon till his death, and

defendant never owned it, nor did she take it by grant; hence she has never had it, and cannot now claim it."

In *White* v. *City of Marion, supra,* there was a conveyance of property owned by the husband. His wife joined in the conveyance with a life estate reserved to both husband and wife for the lives of either or both. In determining the effect of the reservation the court used the following language:

"Such a reservation as is here found does not amount to a conveyance of a life estate to the wife, nor to a transfer of a life estate to husband and wife jointly. It reserved to the grantor, out of the thing granted, a life estate during his life and the life of his wife. All that the wife reserved was a life estate in what she theretofore had, which was an inchoate right of dower and, perhaps, a homestead. As she had no other title, and as the reservation conveyed nothing to her, she, by the reservation, got nothing more than a life estate in what she had. The life estate in the real property was manifestly reserved to the husband, and should be valued accordingly. . . ."

In *Meador* v. *Ward, supra,* there was involved a deed of land owned by the husband in which his wife joined him and in the deed it was provided that the husband and wife "are to have the peaceable possession of the premises herein described for and during their natural life time." The husband died and the question of the wife's interest arose. In discussing this question, the court used the following language:

". . . At the trial below both parties, and the court as well, seemed to take it for granted that the deed if given effect would convey to Anna Meador a life estate in her husband's lands. In this assumption they were clearly wrong. According to the terms of the deed the only persons to whom James F. Meador conveyed any interest whatever were his

five daughters. The deed did not purport to convey to them the full fee it is true. There was excepted from its grant an estate for and during the lives of Meador and his wife. The estate so excepted was not conveyed to any one. It remained in James F. Meador. At his death, his wife having survived him, the outstanding estate *pur autre vie* descended to his heirs. . . ."

The question before us has never been decided in Indiana although the case of *Haines* v. *Weirick* (1900), 155 Ind. 548, has been cited as sustaining the proposition that where there is a reservation of an estate during the lives of the husband and wife such life estate is for the life of both of them. But in this case it does not appear in the opinion nor in the record, which we have examined, that the real estate involved was not owned by the husband and wife jointly, and if it was so owned then the case is not in point in the case before us.

The authorities are in irreconcilable conflict on this question. Perhaps the greater weight in number of cases support the contention that the reservation in the deed in the case before us vested a life estate in the husband and wife jointly, but it seems to us that the cases which hold that the life estate vests only in the husband are based on sounder reasoning. If a reservation can create no estate not already in existence, and if a wife owns nothing more than her inchoate interest in the real estate prior to a deed, and there are no words of grant to her in the deed, then logically she can hold no greater interest in the real estate after the deed than she did before, and the estate reserved in the deed is reserved to the husband and not to her, and during the life time of the husband the profits of the land belong to the husband alone.

It may be added that a number of the cases which hold that a life estate may be vested in the spouse of

the owner by reservation in a deed are based upon the premise that the language of the reservation showed that the owner so intended, and it was held that the intent of the grantor should prevail notwithstanding the general rule that title or estate may not be created by reservation. *Saunders* v. *Saunders, supra; Hall* v. *Meade, supra; Derham* v. *Hovey, supra.* In the case before us there is nothing in the deed to indicate whether the owner intended to create an estate in himself alone so long as he should live and then an estate in his wife during the remainder of her life if she should survive him, or whether he intended to create an estate by entireties in himself and wife so long as both should live and then for the life of the survivor. The only intent that is clear is that the possession and enjoyment of the premises by grantee were deferred until the death of both. There being nothing to indicate the intent of Mr. Scott in the case before us to create a joint life estate in himself and wife during his life, the cases which are predicated on intent are not very persuasive.

Also in some of the cases which hold that a life estate may be vested in a spouse by reservation in a deed it is held that such life estate in the spouse does not begin until after the death of the owner and the termination of the prior life estate in him. *Saunders* v. *Saunders, supra; Bullard* v. *Suedmeier, supra.* These cases are of no help to appellee because the tangible property and bank account in question accrued from earnings before the death of Mr. Scott and under these cases Mrs. Scott's alleged life estate had not then started.

It is likewise true that the money in the checking account, having derived from the life estate in the farm which belonged to Mr. Scott, belonged to Mr. Scott unless Mr. Scott's statement to the president of the bank that he wanted the account to be in the name of both

himself and his wife and the fact that the president added the wife's name upon the pass book constituted a valid gift of a half interest in the account to Mrs. Scott prior to Mr. Scott's death.

We would not be disposed to approve such informality in the handling of bank accounts unless the law clearly requires it. If gifts or transfers of bank accounts or interest therein may be consummated so informally confusion is bound to result and litigation will be promoted.

Money deposited in a checking account in a bank becomes the property of the bank and the bank becomes the debtor of the depositor. 9 C. J. S. 557, and cases cited in Note 53. Indebtedness of the bank to the depositor is a chose in action. There may be a gift of a chose in action, but all the usual requirements of a gift are necessary. There must be intent to give and delivery and irrevocable surrender of control. 38 C. J. S. 823. Delivery of a chose in action not evidenced by an instrument in writing is not a mechanical process, but must be deducted from the conduct of the debtor and donor. In *Ogdon, Admr.,* v. *Washington Nat. Bank* (1924), 82 Ind. App. 187, a gift of a deposit in bank was involved and Judge McMahan said at page 191, that "Where the evidence is sufficient to show an intention to make a gift *inter vivos* of a chose in action, arising from a debt not evidenced by writing, an unqualified direction by the donor to the debtor to pay the debt to the donee, instead of the creditor, is a sufficient delivery of the gift, when the debtor accepts the arrangement and agrees to carry out the wish of the donor." Oral direction and acceptance of the direction are sufficient to constitute delivery. *Ogdon, Admr.,* v. *Washington Nat. Bank, supra; McEwen* v. *Davis* (1872), 39 Ind. 109, 112. So in the case before

us the direction of Mr. Scott to the banker together with the acceptance of such direction by the addition of Mrs. Scott's name upon the pass book would be sufficient delivery, if intent to make a gift were established and control were relinquished, but control was not relinquished. Mr. Scott could withdraw the entire account at any time and redeposit it in his own name alone which would be a complete revocation of the change to joint names. Also no intent to make a gift was shown unless putting the deposit in his own and Mrs. Scott's name was sufficient evidence of such intent, which is not the case. The mere fact that money is deposited in a bank to the credit of the owner and another is not sufficient to show an intent to make a gift.

In 7 Am. Jur. 302, the rule is stated as follows:

"The intention of the owner of money in depositing it in a joint account is, of course, a question of fact where there is evidence as to the intention. In many cases, however, there is no such evidence, and it is then necessary to determine the rights of the survivor from the fact of a deposit in this form. The rule sustained by a majority of cases is that the mere fact that money is deposited to the account of the owner 'and' another, or of the owner 'or' another, does not show an intent to make a gift. According to the view thus taken, it is deemed that such a form of deposit is entirely consistent with a desire on the part of the owner to give his codepositor authority to withdraw money for the owner. The absence of the delivery of the passbook is to be considered in this connection as bearing upon the intent with which the deposit is made, but the possession of the passbook is not conclusive of the existence or non-existence of a gift."

The authorities sustaining this statement are collected in notes in 48 A. L. R. 191, 66 A. L. R. 884 and 103 A. L. R. 1128.

The same rule is stated in different language in Corpus Juris Secundum, as follows:

> "The mere fact of the deposit of money in the name of a third person without the delivery of the pass book, or other evidence of intention to make a gift, however, will not constitute a valid gift inter vivos, since this may have been done for any one of a number of reasons, each without donative purpose. . . ."

38 C. J. S. 832, and cases cited in Notes 77 and 78.

Again in 38 C. J. S. 836, the following statement is made, supported by cases cited in Notes 33, 34 and 35:

> "Where a deposit in a bank is made, even to the joint account of the alleged donor and donee, but the evidence of such deposit is retained by the donor, it is usually held that there is no effective gift, for the reason that the donor has not parted with his dominion; and especially is this held to be true in cases in which the fact of such deposit has not been communicated to the donee. . . ."

In the case before us there was no evidence of Mr. Scott's intent to make a gift when he told the president of the bank that he wanted the account in the name of William H. Scott and Sarah J. Scott. This is greatly different from saying he wanted to give Mrs. Scott all or half of the balance in the account. He may have intended only that she have checking privileges as a matter of convenience to him or her. The addition of Mrs. Scott's name on the pass book did not amount to more than making a deposit of the balance in the account in a new account in the name of Mr. and Mrs. Scott, and that, as we have seen, is not sufficient to show an intent to make a gift. The conduct of the parties certainly showed no such intent. If anything their conduct showed a contrary intent. The bank book, after Mrs. Scott's name had been added, was never

delivered to Mrs. Scott and there was no delivery to her of any instrument of transfer or any memorial by which such gift or transfer could be shown. So far as the records show she had no knowledge of the change. She exercised no control over the account. She wrote no checks and made no deposits.

We conclude that at the time of Mr. Scott's death the personal tangible property upon the farm belonged entirely to him and that the balance in the checking account likewise belonged to him and that the court erred in its contrary decision.

The judgment is reversed and, inasmuch as the facts have all been stipulated, it is ordered that the decree in the court below be modified in accordance with this opinion.

NOTE.—Reported in 68 N. E. (2d) 550.