### WILT v. BROKAW.

### WILT v. PEOPLES TRUST & SAVINGS CO. et al.

Nos. 10420, 10421.

United States Court of Appeals
Seventh Circuit.

April 15, 1952.

---

John D. Shoaff, Shoaff, Keegan & Baird, Fort Wayne, Ind., for Oscar R. Brokaw.

J. A. Bruggeman, Barrett, Barrett & McNagny, Fort Wayne, Ind., for Robert H. Wilt.

James R. Newkirk, William G. Keane, Newkirk, Keane & Kowalczyk, Fort Wayne, Ind., for Peoples Trust & Savings Co.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment of the District Court holding that Robert H. Wilt, the plaintiff, was entitled to the balance re-

maining in a joint savings account in the defendant bank at the death of Frances B. Wilt, the other joint owner of the account. Oscar R. Brokaw, Mrs. Wilt's brother, as the executor of her estate prosecutes this appeal. Robert H. Wilt has also filed a cross appeal against The Peoples Trust and Savings Company claiming that he was entitled to the legal rate of interest on the deposit from the time of his demand on the bank to the time the money was paid into the court, rather than interest at the rate normally paid by the bank on savings accounts.

After Mr. Wilt filed suit against the Bank, Mr. Brokaw, the executor of Mrs. Wilt's estate, upon the bank's motion, was joined as a defendant. The bank continued to hold the money until the entry of the judgment in the District Court.

The executor appeals from the ultimate decision of the court that there was a joint tenancy in the account between Mrs. Wilt and Robert H. Wilt with the right of survivorship, and also from rulings of the court in excluding testimony offered by the executor of certain conversations, and in admitting into evidence certain checks written by the plaintiff and made payable to Mrs. Wilt.

Mr. Wilt bases his appeal on two grounds: (1) He insists that the bank should be required to pay him the legal rate of interest because of its unreasonable delay in paying the money into the court and because of the alleged partisan attitude which the bank displayed, instead of acting as a mere stakeholder. (2) If the judgment of the District Court is reversed, the plaintiff insists that the case be remanded for a retrial of his cause of action against the bank for its failure to prepare a binding contract to pay to him as the surviving joint owner the balance of the money remaining in said account after the death of Mrs. Wilt.

The court found the following facts: On April 6, 1915, Frances B. Wilt opened Savings Account No. 10500 with the bank in her commonly used name of "Mrs. Fannie B. Wilt." On May 2, 1931, while withdrawing some money from the account, Mrs. Wilt informed the Secretary of the bank that she wished to have the name of Robert H. Wilt, her stepson who was also her nephew, added to the account. The bank Secretary thereupon produced a printed form of signature card, wrote on it the number of the account, "10500," and presented the card to Mrs. Wilt who signed it. The Secretary then marked an "X" on the card to indicate where Mrs. Wilt should have the plaintiff sign, gave her the card and instructed her to return it to the bank after she had secured the signature of Robert H. Wilt, who lived in Cleveland, Ohio. After the card was returned with Mr. Wilt's signature, the bookkeeping department of the bank typed the name "Robert H. Wilt" at the top of the card. The card after being so executed read as follows:

"Robert H. Wilt

Joint Savings Acct. No. 10500

"The Peoples Trust & Savings Co., Fort Wayne, Indiana, is hereby authorized to recognize either of the signatures below in the payment of funds or the transaction of any other business. Either one or both or the survivor to sign checks. The signature of either one to be sufficient for withdrawal of all, or any part of the funds standing to the credit of the above account.

"I, We, or either of us, agree to the rules and regulations governing Savings as appears in Savings Account book or any alteration or amendments made after due notice is given.

&ast; &ast; &ast;

"Signature

"/s/ Fannie B. Wilt

"Signature

"X  /s/ R. H. Wilt

&ast; &ast; &ast;"

At the time Mrs. Wilt signed the card, the Secretary wrote on the inside page of Mrs. Wilt's pass book, after Mrs. Wilt's name, the words, "Or Robert H. Wilt" and stamped beneath this "Either of them or the survivor of them." The Secretary then returned the pass book to Mrs. Wilt and it remained in her possession until her death. At the time the signature card for this account was returned to the bank

the books and records of the bank were also changed accordingly. At that time there was a credit balance of $434.87 in the account. Thereafter all deposits and withdrawals were made by Mrs. Wilt. When Mrs. Wilt died on May 24, 1948, there was a balance of $15,658.15 left in this account. Most of this balance came from a deposit made in 1940 by Mrs. Wilt of $16,000.00 which was an inheritance from the estate of her sister.

Mrs. Wilt was survived by the plaintiff, Robert H. Wilt, by his brother, Frank B. Wilt, by two nieces, the daughters of Mrs. Wilt's brother, Oscar R. Brokaw, who is also the executor of her estate, and by her sister, Mary M. Heit. All of these survivors, except the plaintiff and his brother, were residents of Fort Wayne, Indiana. Mrs. Wilt, by her last will and testament, provided for cash bequests totaling $6,000.-00, of which $3,000.00 was to Robert H. Wilt. Her will also provided that the two brothers, Robert and Frank Wilt, be given her cottage property, a life estate in her Fort Wayne home (with Robert's wife) and each was given one-third of her residuary estate. The other one third of her residuary estate and the remainder in her home property were given to the two nieces. At the time she made this will in 1944, Mrs. Wilt had more than $15,000.00 in her joint savings account and $1,055.45 in her checking account. During her life time Mrs. Wilt had also had a joint checking account with Robert H. Wilt at the same bank. Mrs. Wilt closed out this account on February 2, 1933, by withdrawing all the money from it.

The executor insists that the District Court erred in finding that:

"On May 2, 1931, Mrs. Frances B. Wilt intended to and did create a joint ownership with plaintiff Robert H. Wilt of Savings Account No. 10500 with the defendant Peoples Savings and Trust Company of Fort Wayne, Indiana, and at the time of the death of Mrs. Frances B. Wilt she and plaintiff were joint tenants of all funds in said joint Savings Account No. 10500 with the right of survivorship."

In a memorandum opinion the District Court stated that there were some facts and circumstances relative to intent which it might be argued indicated that Mrs. Wilt did not intend to give Robert Wilt a joint interest in her savings account but the court concluded that "the total effect of all the attendant facts and circumstances is not sufficient to demonstrate that Mrs. Wilt intended to bring about a result other than that indicated by the express language used by the bank in transferring her savings account into a joint account." The court pointed out that there was no evidence that Mrs. Wilt did not understand the meaning of the language used in changing the account; that she must have had some purpose in instructing the bank to change the account to a joint account; that she must have been aware that she was vesting some power in the plaintiff over the funds; that there was no evidence that she intended the power to take effect other than presently; and that, in view of the fact that the plaintiff's residence was in Cleveland, it seemed improbable that the change to the joint account was for Mrs. Wilt's own benefit and convenience. The court also noted that if the change had been only for her benefit and convenience it was logical to assume that Mrs. Wilt would have chosen a close relative living in the same community, as she subsequently did when she created a joint checking account with her sister, rather than to choose the plaintiff who lived and worked in Cleveland.

Indiana recognizes that there may be a joint tenancy in personal property. Burns' Indiana Statutes Annotated (1951 Replacement), § 51–104 reads:

"* * * the survivor of persons holding personal property in joint tenancy shall have the same rights only as the survivor of tenants in common, unless otherwise expressed in the instrument."

Another Indiana statute, Burns' Indiana Statutes Annotated (1950 Replacement), § 18–2001(a) provides:

"When a deposit is made in any bank or trust company, in the names of two [2] persons, payable to either, or pay-

able to either or the survivor, such deposit, or any part thereof, or any interest thereon may be paid to either of such persons, whether the other be living or not, and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to such bank or trust company for any payment so made. * * *"

This statute, of course, does not say that as between the parties, or their estates, such a deposit shall constitute a joint tenancy with the right of the survivor to the balance in the account on the death of the other depositor but only that the bank, if it treats such an account as a joint tenancy, will be protected.

■ In the instant case the signature card describes the account as a "Joint Savings Account." There is also the statement over the signatures of the depositors by which the bank is authorized to recognize either of the signatures in the payment of funds or the transaction of other business. This is followed by the statement which authorizes either depositor or the survivor to sign checks and also states that the signature of either is "to be sufficient for the withdrawal of all, or any part of the funds" in the account. This agreement seems clearly to meet the requirements of the Indiana statute that the right of the survivor be expressed in the instrument creating the joint tenancy.

■ In addition to the signature card, the pass book and the records of the bank, there were other relevant facts and circumstances shown by the evidence. There existed between the donor and the donee a close family relationship. The donor, Mrs. Wilt, was a sister of Robert Wilt's mother. On the death of Robert's mother, Mrs. Wilt married Robert's father, Franklin Wilt, and thereby became Robert's stepmother as well as his aunt. One child, David, was born to Franklin and Frances Wilt but this one child died "a great many years ago." Franklin Wilt, the father, died in 1926. The two boys, Robert Wilt and his brother, Frank, were then all that remained of the immediate family of Frances B. Wilt.

Beginning in 1921 Robert Wilt sent monthly checks of substantial amounts to his father. After the death of his father, Robert continued sending the checks to the mother until 1931. The total of all of these checks amounted to more than $6,500.00. The checks sent to Mrs. Wilt were either cashed or deposited by her in The Peoples Trust and Savings Company. Robert visited his mother from time to time at her home in Fort Wayne and also spent some time at her summer cottage each year. Mrs. Wilt's preference for Robert, as compared to his brother, Frank, was shown by the fact that in the last will she executed in 1944 she left Robert $3,000.00 more than she gave to Frank. The fact that Mrs. Wilt made cash bequests totaling a larger amount than she had in her checking account is not important. The total amount of the personal property owned by her, either at the time of the execution of her will or at the time of her death, is not shown. The evidence does disclose that at the time of her death she owned some corporate stocks on which she received dividends of $328.00, which she deposited in the joint savings account on January 15, 1947. The evidence fails to disclose what, if any, other stocks or bonds she may have owned.

In view of all of the facts and circumstances in this case, bearing upon the finding of the District Court of the ultimate fact of the intention of Mrs. Wilt at the time she established this joint account, we cannot say that the court's finding was clearly erroneous.

■ There are many decisions in our Indiana courts involving questions concerning joint ownership of personal property. Not all of the statements in these decisions are consistent. In some of the decisions there have been attempts to apply rules announced in previous decisions in which the joint ownership of personal property of a different nature had been considered or where different types of contracts or assignments had been used in creating the joint ownership. This accounts for some of the inconsistencies. Both the defendant Brokaw and the defendant bank concede that under the Indiana law it is possible for

two persons to have a joint bank account on which either may draw checks and the balance of which remaining at the death of one will belong to the survivor.

The defendant Brokaw contends that "in order to establish a valid gift of a bank account in two names, the donee who did not deposit funds in such account must prove (1) an intent on the part of the donor to make a present gift and (2) an effective delivery." Brokaw also contends that where a depositor places an account in his name and that of another, but retains possession of the pass book, makes all deposits and withdrawals, and in general continues to exercise control and dominion over the account, there is no effective delivery. As supporting these contentions the defendant cites four Indiana cases: Bulen v. Pendleton Banking Co., 118 Ind.App. 217, 78 N.E. 2d 449; Cunningham v. Teague, 105 Ind. App. 46, 11 N.E.2d 525; First & Tri-State National Bank & Trust Co. v. Caywood, 95 Ind.App. 591, 176 N.E. 871; and Ogle v. Barker, 224 Ind. 489, 68 N.E.2d 550.

█ In the Bulen case, supra, the donor at the time she changed her checking account to a joint account, stated that she was changing the account so that the donee would get the money at the donor's death. Since this statement clearly indicated that the donor was not making a present gift, the court there properly held that "an intention or promise to make a gift effective in the future" is invalid without consideration and cannot constitute a valid gift *inter vivos.*

In the Cunningham case, 105 Ind.App. 46, 11 N.E.2d 525, the donor was the owner of certain "instalment investment stock" in the Railroadmen's Building & Savings Association. This stock was subject to increase by deposit of additional moneys and subject to decrease by withdrawal of funds previously invested. Under the rules of the Association, it was required that the pass book issued to the owner of such stock be presented when funds were withdrawn, and the Association, by its rules, could require certain advance notice of withdrawals. The account there in question was first opened in the name of the donor and her son. Several years later, upon the death of

the son, his name was taken off of the account. Shortly thereafter the donor, with her son's widow, went to the place of business of the Association with her pass book and transferred the account to "Tracy Price (the donor) or Mable Teague or Georgia Cunningham, Joint Account payable to the order of either of them, before or after the death of the other * *." About a year later the donor again went to the office of the Association and transferred the account "to Tracy Price (the donor) or Mabel Teague, this 22nd day of July, 1930." Thereafter the pass book was retained by the donor and she alone withdrew money from the account. After the death of the donor the balance of the fund was withdrawn from the account by Mable Teague, as executrix of the donor's estate. Georgia Cunningham, the son's widow, relied on the transfer of November 18, 1929, as constituting a gift *inter vivos* to her and brought an action against the Savings Association and Mable Teague for an alleged conversion by them of the total shares of stock involved. The court there emphasized the fact that the donor, by keeping her name as one of the owners of the account reserved the right to have the fund paid to herself; that she kept the pass book in her own possession and from time to time exercised her right to withdraw funds; and that she later asserted and exercised control over the investment stock by presenting the pass book and having the fund made payable to herself and Mable Teague. The court said, 105 Ind.App. at page 51, 11 N.E.2d at page 528:

> "It seems clear that she did not intentionally part with control over this investment stock at any time, and this she must have done in order to make a valid gift *inter vivos.*"

The court there relied on several Indiana decisions which involved different types of personal property: Goelz, Executrix v. Peoples Savings Bank, 31 Ind.App. 67, 67 N.E. 232. (A bank deposit made by a mother for and in the name of her son where the court held that the gift to the son was valid.) Grant Trust & Savings Co. v. Tucker, 49 Ind.App. 345, 96 N.E. 487. (United States bonds placed in an envelope

and left with the bank for the donee held a valid gift *inter vivos*.) Kratli v. Starke County Bank, 95 Ind.App. 402, 183 N.E. 696. (A gift of a certificate of bank stock.) The Gammon Theological Seminary v. Robbins, 128 Ind. 85, 27 N.E. 341, 12 L.R.A. 506. (An attempted gift of a note for $700.-00, the gift to be effective when the note fell due, the due date being three years later.)

The Caywood case, 95 Ind.App. 591, 176 N.E. 871, 873, involved a certificate of deposit made out to the order of the donor or Mrs. Delta Caywood, the donee, which the bank promised to pay on the return of the certificate properly endorsed. Shortly after the donor's death the certificate of deposit was endorsed and cashed by the donor's executor. After purchasing the certificate the donor told the donee's son:

> "I have a thousand dollars on deposit at the Tri-State Bank at Fort Wayne, and *whenever I die* it is to be your mother's." (Our emphasis.)

The court there properly held that this amounted to an attempt on the donor's part to make a gift of money to the donee to take effect at the donor's death and it was, therefore, "merely an attempt to do that in the future which can only be done by will."

In the Ogle case, 224 Ind. 489, 68 N.E.2d 550, a bank account was owned by and in the name of William H. Scott. Prior to his death he asked the president of the bank to place the account in the name of "William H. Scott and Sarah J. Scott." The bank president added the name of Sarah J. Scott on the donor's pass book but made no corresponding change on the books of the bank. The bank book was never delivered to Mrs. Scott and it appeared that she never knew of the addition of her name to the pass book. The court there held that the mere addition of Mrs. Scott's name on the bank account did not amount to a transfer to her of an owner's interest in the bank account. The court said, 224 Ind. at page 503, 68 N.E.2d at page 557:

> "In the case before us there was no evidence of Mr. Scott's intent to make a gift when he told the president of the bank that he wanted the account in the name of William H. Scott and Sarah J. Scott. This is greatly different from

saying he wanted to give Mrs. Scott all or half of the balance in the account. He may have intended only that she have checking privileges as a matter of convenience to him or her."

In the Ogle case the court recognized, 224 Ind. at page 501, 68 N.E.2d at page 556, that indebtedness of the bank to a depositor is a chose in action, that there may be a gift in a chose in action where it is the intention to give and deliver, and that oral direction to pay and the acceptance of the direction by the bank are sufficient to constitute delivery if control by the donor is relinquished. But the court said, 224 Ind. at page 502, 68 N.E.2d at page 556, that in that case the donor did not relinquish control over the funds because the donor "could withdraw the entire account at any time and redeposit it in his own name alone which would be a complete revocation of the change to joint names." Of course, if it were necessary to show in such a gift that the donor had relinquished the right to draw on the account one could never create ownership by gift in a joint account. The law in Indiana does not require such relinquishment by the donor.

In Hibbard v. Hibbard, 118 Ind.App. 292, 73 N.E.2d 181, a married son and his father opened a joint bank account payable to either of them or to the survivor. No money was then deposited but the son, who was an officer in the Army Air Force, thereafter mailed his Government pay checks to the bank for deposit in the joint account. The father made no deposits in, and no withdrawals from, the account until after the son's death. The father then withdrew the entire balance. The son's widow, acting as the administratrix of his estate, brought suit against the father to recover the money for the estate. One of her contentions was that there was no valid gift to the father because the son never parted with control of the subject matter of the alleged gift. However, the court held that the father and son had created a valid joint tenancy with rights of survivorship and that the balance remaining in the account belonged to the father.

In Clausen v. Warner, 118 Ind.App. 340, 78 N.E.2d 551, Donald K. Warner closed

his individual bank account and with the money therefrom opened a new bank account in the name of "Mr. and Mrs. Donald K. Warner and the survivor of them as joint tenants and not as tenants in common." Both Mr. and Mrs. Warner signed signature cards. The pass book was kept by the wife except when deposits or withdrawals were made. Thereafter deposits were made from the earnings of the decedent or from the profits of a business in which he was a partner. The evidence disclosed that the wife had personally made at least one withdrawal. On that occasion she withdrew $100.00 and used it for the purchase of a coat for herself. Even though the husband's right to draw on the account was not surrendered, the court there held that the husband and wife had established a joint account with right of survivorship. Both this case and the Hibbard case were decided by the Indiana Appellate Court more than a year after the decision by the Indiana Supreme Court in Ogle v. Barker. In both the Clausen and Hibbard cases the Supreme Court of Indiana denied a petition to transfer the case from the Appellate Court.

Rule 2–23(4) of the Rules of the Supreme Court of Indiana, 2 Burns' Indiana Statutes Annotated (1946 Replacement), page 20, provides that a party against whom there has been a decision of the Appellate Court of Indiana may petition for a transfer of the case to the Supreme Court alleging that the opinion of the Appellate Court (a) contravenes a ruling precedent of the Supreme Court or (b) that the opinion of the Appellate Court erroneously decides a new question of law. By refusing transfer in these two cases the Supreme Court, more than a year after its decision in Ogle v. Barker, decided that the decisions in the two Appellate Court cases were correct. Thus there is no question that Indiana courts do recognize that there may be a gift of ownership in a joint bank account without the donor's relinquishing the power to draw on the account.

The appellant Brokaw also alleges two other grounds for reversal. Brokaw first insists that the District Court erred in excluding Brokaw's testimony of the explanation Mrs. Wilt had given him in 1940, at the time of the deposit in the savings account of $16,000.00, when Brokaw asked her why she had added Robert's name to the account. The offer to prove was: "She said she had done it to enable him to withdraw funds for her in the event of an emergency when she was unable to draw them." Brokaw contends that this statement constituted direct evidence on a vital issue, the intent of Mrs. Wilt in adding Robert's name to the account and the subsequent deposits therein.

The first decision cited in Brokaw's brief to support this contention shows that the rule therein announced is not applicable here. Brokaw's brief cites American Security Company v. Minard, 118 Ind.App. 310, as saying at page 314–315, 77 N.E.2d 762, at page 763:

"It seems that our courts in the shadowy borderland of exception to the hearsay rule of evidence have laid out a path which is dim, but nevertheless plain enough that we feel constrained to follow it, which make such *declarations of the existence of a particular intention made contemporaneous with, or immediately preparatory to, a particular litigated act,* admissible as evidence, which tends to illustrate and give character to such act. (Citing cases.)" (Our emphasis.)

A quotation in appellant Brokaw's brief from Koenig v. Bryce, 94 Ind.App. 689, 180 N.E. 682, 683, contains the following statement:

"When the intention to be proved is important only as qualifying an act, *its connection with that act must be shown,* in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, *it may be proved by contemporaneous oral or written declarations of the party.*

" 'The existence of a particular intention in a certain person at a certain time being a material fact to be proved, *evidence that he expressed that intention at that time* is as direct evidence of the fact, as his own testimony that he

then had that intention would be.'" (Our emphasis.)

The language used in both of these cases cited by Brokaw clearly limits such statements of intention to statements made at the time of the action. Here Brokaw would have testified as to Mrs. Wilt's statement of intention made almost ten years after the action which the statement sought to qualify or explain. Brokaw insists that her intention at the time she made the largest deposit in the account was also relevant. However, Brokaw's offer to prove shows that her statement related only to her intention at the time she changed the account to a joint account. A statement made by Mrs. Wilt ten years later purporting to show what her intention was at the time she changed her account was not admissible.

Brokaw also insists that the District Court erred in admitting in evidence the series of checks which were drawn by the plaintiff on a Cleveland bank and made payable to Mrs. Wilt and her husband. As we pointed out above, the checks payable to Mrs. Wilt showed by their endorsements that she either cashed them or deposited them in the same bank in which she had the joint account. Defendant bank objected to the admission of these checks on the ground that their offer by the plaintiff was an attempt to vary the written contract between the bank, Mrs. Wilt and the plaintiff, by collateral testimony. Defendant Brokaw objected to their introduction on the ground that they had no probative force on the issues of the case. Plaintiff's offer to prove that the checks represented gifts from him to his father and mother, in a total amount of more than $6,500.00, was objected to by Brokaw and rejected by the court on the ground that the plaintiff was incompetent to testify.

■ At the time the checks were admitted in evidence the court stated that it was admitting them without indicating whether or not they had any probative force or value. The court did not mention these checks in its memorandum opinion and made no finding concerning them. If the court committed error in their admission, it was harmless.

■ Plaintiff Wilt contends on his cross-appeal that "the court erred in failing to award him interest against the bank at the legal rate" for the period between the time of his demand on the bank and the time the bank paid the money into court. The bank did not pay the money into court until after the final judgment was entered. The court assessed interest for this period at only the normal rate paid by the bank on savings accounts, rather than at the legal rate of interest.

After Mrs. Wilt's death the plaintiff demanded that the bank pay him the balance of the money in the account. When the plaintiff made the demand he did not present the pass book for the account to the bank. This was a savings account. The rules and regulations of the bank governing savings accounts, copies of which were printed in the savings account pass book, stated:

"6. Deposits may be withdrawn by the depositor in person, or by his written order or letters of attorney; but in either case, This Pass Book must be presented so that such payments may be duly entered therein."

On the signature card which Mr. Wilt signed it is stated:

"I, We, or either of us, agree to the rules and regulations governing Savings as appears in Savings Account book and any alteration or amendments made after due notice is given. * *"

At the trial there was testimony that the plaintiff was told by the bank that he would be paid if he would procure and present the pass book. By the terms of plaintiff's written agreement he was, therefore, not entitled to payment until he acquired the pass book and presented it to the bank. When the judgment was entered in the District Court the bank paid into the court the amount it found to be due plaintiff. It was not a failure of the bank which prevented the plaintiff from receiving the money during this time, but his own inability to obtain and present the pass book.

Plaintiff cites two cases to support his position: Rosenbaum Bros. v. Nowak Milling Corp., 222 Ind. 108, 115–116, 51 N.E.2d 623, and Krieg v. Palmer National Bank, 67 Ind.

App. 677, 696, 111 N.E. 3*l*. Both of these cases clearly state that a stakeholder will not be required to pay interest. In both of those cases interest was assessed because the holder of the money was not a stakeholder but asserted a claim of its own to the money. In the present case the bank never asserted a personal claim to the money in the account.

Finding no prejudicial error, the judgment of the District Court is affirmed.

L. Hand, Circuit Judge, dissented.