CLAUSEN *v.* WARNER ET AL.

[No. 17,640. Filed April 8, 1948. Rehearing denied April 29, 1948. Transfer denied May 27, 1948.]

*Hasley & Eggers,* both of Fort Wayne, attorneys for appellant.

*Shoaf, Keegan, & Baird,* and *Robert A. Buhler,* all of Fort Wayne, attorneys for appellees.

FLANAGAN, J.—The facts in this case were found specially and this appeal is based upon exceptions to the conclusions of law.

The facts essential to the determination of the question here presented may be summarized as follows:

Appellees Sylvester Warner and Esther M. Warner are the father and mother of Donald Warner now deceased. Appellant is his widow. Appellant and Donald Warner were married on July 17, 1938. At that time and continuously till the time of his death he was engaged with his father in the operation of a grocery. The business was carried on as a family affair with appellant, both appellees and the decedent contributing their efforts as needed. No salaries were paid but the profits were divided between the decedent and his father.

On April 20, 1939 decedent had on bank deposit in his own name the sum of $1635.22, part of which represented his share of profits from the grocery and part of which represented earnings by him at other jobs. On that day he closed this account and with his wife, appellant herein, opened a new account in the name of "Mr. or Mrs. Donald K. Warner and the survivor of them as joint tenants and not as tenants in common." Both decedent and appellant signed signature cards. The pass book was turned over to appellant and kept thereafter by her in her purse except when deposits or withdrawals were made. On July 24, 1939, a withdrawal of $1650 was made and used as payment on a home, the title to which was taken by decedent and appellant as tenants by the entirety. Various deposits were made from the earnings of decedent or from his share of the profits from the grocery business and occasionally withdrawals were made.

On April 23, 1943, decedent was inducted into the United States Army. Thereafter appellant worked in the grocery eight or nine hours per day during the week and on Sunday forenoons. The profits continued to be divided and decedent's share put in the account above referred to. While the record does not disclose who made all the withdrawals or the use to which the money so withdrawn was put, it is disclosed that appellant personally made at least one withdrawal. On September 2, 1943, she withdrew $100 and used it for the purchase of a coat for herself.

On October 14, 1943, decedent returned home on furlough. At that time the above referred to account had a balance of $5630.59. On October 20, 1943, the decedent took the pass book out of his wife's purse without her knowledge, went to the bank, withdrew $5500 and delivered it to his father, who in turn delivered it to his mother, both of whom knew all the facts above recited. On the same date, decedent executed a written instrument formally making a gift of the money to his mother. Thereafter he returned to his army camp in Utah where he died on October 31, 1943. Appellant knew nothing of the withdrawal of the $5500 until after his death.

The trial court by its conclusion of law held that the money put in the account above described continued at all times to be the property of Donald Warner and that he had the right to withdraw it and give it away. Appellant insists that the money so deposited became the joint property of herself and her husband and that he was without right to withdraw it and convert it to his own exclusive use without her knowledge or consent.

In the case of *Ogle* v. *Barker* (1946), 224 Ind. 489, 68 N. E. 2d 550, our Supreme Court points out that

the intention of the owner of money in depositing it in a joint account is a question of fact where there is evidence as to the intention. It has been suggested in the instant case that both parties were owners of the money deposited before the deposits were made. We need not give consideration to that suggestion for we think the intention of both parties in opening the account and making deposits therein was at all times clear. They intended that it should be their money as joint owners. They provided on the face of the account itself that it should belong to each "as joint tenants and not as tenants in common." The pass book was delivered to appellant and retained by her at all times except when it was taken to the bank for the purpose of making deposits or withdrawals. At least one withdrawal was made by her for her own use. She worked in the grocery to make the deposits possible even after decedent went into the army. When a sizeable withdrawal was made it went for a payment on a home which was placed in their names as tenants by the entirety. No fact is found which indicates an intention different than that the money should be their joint money. If they were joint owners he could not by withdrawing the money without her knowledge or consent divest her of her joint ownership. See *O'Connor* v. *Dunnigan* (N.Y. 1913), 143 N.Y.S. 373, 158 App. Div. 334, affirmed in 213 N.Y. 673, 107 N. E. 1082.

Joint tenants hold "by the half and by the whole." They may dispose of their individual interests during their lives but if they fail to do so the entire goes to the survivor. 14 Am. Jur., §§ 6 to 14, pp. 79 to 87. But neither can dispose of the interest of the other. 14 Am. Jur. 148, § 84. In the

instant case the decedent was without power to dispose of appellant's one-half interest in the funds on deposit.

Since appellees received the money of appellant with full knowledge of all the facts and circumstances and knowing that decedent was without right to give it to them, it is elementary that they are liable for its return. *Moore* v. *Shields* (1889), 121 Ind. 267, 23 N. E. 89; *Boos* v. *Land* (1904), 163 Ind. 445, 71 N. E. 120; *Peoples St. Bank* v. *Caterpillar Tractor Co.* (1938), 213 Ind. 235, 12 N. E. 2d 123.

Judgment reversed with instructions to restate the conclusions of law and for further proceedings consistent with this opinion.

NOTE.—Reported in 78 N. E. 2d 551.