Robert Lee ROGERS, Betty Barley, Mary Davis, Carol Martin, Defendants-Appellants,

v.

Frank R. ROGERS, Plaintiff-Appellee.

No. 1-981A284.

Court of Appeals of Indiana, First District.

June 29, 1982.

James A. Lewis, Terre Haute, for defendants-appellants.

Dennis H. Stark, Kesler & Stark, Terre Haute, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendants-appellants Robert Lee Rogers[1] (the son) appeals a judgment of the Vigo Circuit Court upon consolidated causes wherein the trial court, without the intervention of a jury, found in favor of plaintiff-appellee Frank R. Rogers (the father) on his complaint seeking the return of his money taken from a joint savings account by his son.

We affirm.

## STATEMENT OF THE FACTS

Originally, the father opened a joint savings account with his first wife and he deposited $32,073.02 into the account, all of which funds were the product of his own labor. Upon his first wife's death, the father and his son opened a joint savings account in which was deposited the father's $32,073.72, and they both signed the following joint savings account signature card:

Terre Haute, Ind. # 1–04043–8

To the TERRE HAUTE SAVINGS BANK of Terre Haute, Indiana S.S. 307–05–4486

### JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR

We agree and declare that all funds now, or hereafter, deposited in this

---

1. Other named defendants-appellants were Betty Barley, Mary Davis and Carol Martin who were sisters of Robert Lee Rogers and the natural daughters of plaintiff-appellee Frank R. Rogers.

account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of either of us or the survivor.

It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Payment to or on check of survivor shall be subject to the laws relating to inheritance and succession taxes and to all rules and regulations made pursuant thereto.

WITNESS:

| 202 Hancock St. | /s/ Frank Rogers |
| 47804 | /s/ Robert Lee Rogers |

The father kept the passbook to the joint account and he eventually remarried. Thereafter, the son withdrew the same $32,073.72 from the joint account and with his father's funds purchased certificates of deposit made payable to the son and his three sisters. The father's name appeared nowhere on the certificates of deposit. Upon discovering that all his money had been withdrawn from the joint account by the son, the father demanded his son return the money, but he refused. As a result, the father brought suit against the son for return of his money alleging that the son had withdrawn all the father's money without the father's knowledge or permission. Subsequently, the son filed a petition for guardianship, seeking to have his father declared an incompetent and the son appointed guardian over his father and his financial affairs.

The son testified his father established a joint account so that the son could withdraw funds for his father's benefit in the event his father became ill and unable personally to withdraw his money. The son further testified that his father could withdraw money from the joint account at will and without notifying the son in advance.

Also, the son admitted that all of the joint savings account funds were his father's money, the son having never deposited any money into the account. The son testified:

"Q. I understand that. Your dad is— just kind of [fiscally] responsible isn't he? I mean if we want to call it tight maybe, he's tight.

A. Yes, he always has been tight. That's the reason right now I want to make sure the money is there in case he needs it. I don't want this woman to go through it.

Q. Are you saying that you want to make sure the money is there in case he needs it or you're saying that you want to make sure the money is there in case he dies and he's married to Fern and you won't get any of it?

A. No, I said I want the money in case he needs it.

 * * * * * *

A. Because I think that the woman now that he's married is out to get whatever she can and I think that he will not have nothing left after she gets through with him and uh—I don't believe in that. I think that the money he's got, it should be there to take care of him."

The trial court found that the father was not an incompetent in need of a guardian and it ordered the son to return the father's money he had withdrawn from the joint savings account.

### ISSUES

The son raises the following issues for review:

"I. Did the evidence indicate that the appellee, Frank R. Rogers, because of age, has so lost his mental faculties that the Court should have granted appellant's petition for guardianship instead of denying it?

II. Does the fact that the appellee, Frank R. Rogers, placed money in a joint savings account to establish

that he made a valid gift to an appellant and therefore, the Court could not order appellants to return the funds withdrawn to Mr. Rogers?"

## DISCUSSION AND DECISION

The son first questions the sufficiency of the evidence as to the trial court's denying the son's petition for guardianship over the father. In other words, the son is now attacking a negative judgment for insufficient evidence.

Appellants cannot attack a negative decision on the ground that there was a lack of evidence to sustain the judgment. *Steup v. Indiana Housing Finance Authority*, (1980) Ind., 402 N.E.2d 1215. A party appealing a negative judgment must establish that the evidence is without conflict and leads to but one conclusion and that the trial court did not reach that conclusion. *Citizens National Bank of Whitley County v. Stasell*, (1980) Ind.App., 408 N.E.2d 587. In appealing from a negative judgment on his counterclaim, defendant could only attack the trial court's decision as contrary to law. *Grueninger Travel Service v. Lake County Trust Company*, (1980) Ind.App., 413 N.E.2d 1034; *Churchwell v. Coller and Stoner Building Co.*, (1979) Ind.App., 385 N.E.2d 492.

The son is asking us to reweigh the evidence and this we cannot do. Furthermore, as the father points out in his brief, the son has failed to cite any cases or other authority to support his contention that the trial court erred in refusing to find the father an incompetent and in refusing to appoint a guardian. Therefore, pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), the issue is waived. *Southern School Buildings, Inc. v. Loew Electric, Inc.*, (1980) Ind.App., 407 N.E.2d 240.

The son's second contention, the only issue requiring our attention, is that the father had "gifted" the money to him by co-signing the signature card on the joint savings account, citing as authority *Moore v. Bowyer*, (1979) Ind.App., 388 N.E.2d 611.

We first would note, as the father reminds us in his brief, that the son claimed in his motion to correct errors the following error:

"* * *

2. The judgment of the Court holding that the $32,073.02 should be placed in a trust is in error in that the evidence showed that as a matter of law, Frank R. Rogers made a gift of those funds to the defendants/petitioners herein.

If Frank R. Rogers was truly competent, the evidence showed that he voluntarily placed the money in question into a joint account with defendant, Robert Lee Rogers. I.L.E. defines a gift as a voluntary transfer by one person to another without any consideration or compensation therefor. I.L.E. Gifts, Section 2. There was freedom of will, the gift was delivered, and Mr. Robert Lee Rogers clearly accepted. See *Moore v. Bowyer* (1979) 388 N.E.2d 611."

In his brief, the son argues, for the first time, that he had a right to withdraw the funds because both he and his father had signed the signature card.

A defendant who fails to bring an argument to the attention of the trial court in his motion to correct errors has waived the issue. *Allen v. State*, (1980) Ind.App., 406 N.E.2d 976. Claims or arguments presented for the first time in appellant's brief are not properly before the court of appeals. *City of Indianapolis v. Ervin*, (1980) Ind.App., 405 N.E.2d 55; *Highland v. Williams*, (1975) 166 Ind.App. 492, 336 N.E.2d 846.

We agree with the father that the issue preserved for review is: whether the father's placing of funds into a joint savings account with his son constituted the making of a gift of those funds to his son. Despite contending in his brief that he had a right to withdraw funds from the joint account, the son relies on *Moore* for the proposition that his father's signature on the signature card presumptively established the donative intent of his father to relinquish the funds to the son. Therefore, the son is only rais-

ing his gift argument on appeal, which he had raised in his motion to correct errors.

In *Moore,* the son had been handling his mother's financial affairs for several years. Because of his mother's physical ailments, the son possessed a power of attorney to write checks from his mother's checking accounts. The son and his mother then created a joint savings account and she deposited $17,000 into it. In setting up the joint account, both the mother and son read and signed the signature card which stated the signatories were:

> "... 'joint tenants with right of survivorship and not as tenants in common,' and 'that any funds placed in or added to the account by any one of the parties is and shall be conclusively intended to be a gift ... to the other signatory ... to the extent of his or their pro rata interest ....'"

388 N.E.2d at 612. In view of the unambiguous language in the signature card, the court in *Moore* affirmed the trial court's decision that the mother had intended the funds to be a gift to the son.

 In the instant case, as the father correctly points out, the signature card contains absolutely no language conferring a gift of funds from one signator to another. The signature card merely sets forth that all deposited funds "shall be our joint property and owned by us as joint tenants ...." The mere fact that money is deposited in a joint bank account to the credit of the owner and another is not sufficient to show an intent to make a gift to the other. *Ogle v. Barker,* (1946) 224 Ind. 489, 68 N.E.2d 550; *Bulen v. Pendleton Banking Co.,* (1948) 118 Ind.App. 217, 78 N.E.2d 449. There must be intent to give and deliver and an irrevocable surrender of control of the funds. *Ogle, supra.* One of two joint tenants of money deposited in a joint bank account cannot, by withdrawing the money without the other's knowledge and consent, divest the other of his joint ownership therein. *Clausen v. Warner,* (1948) 118 Ind. App. 340, 78 N.E.2d 551. Furthermore, joint tenants hold "by the half and by the

whole," and may dispose of their individual interests during their lives, but, if they fail so to do, the entire goes to the survivor. However, neither joint tenant can dispose of the interest of the other in life. *Clausen, supra.*

Under Ind.Code 32–4–1.5–1(4), the definition of joint account is as follows: "an account payable on request to one (1) or more of two (2) or more parties whether or not mention is made of any right of survivorship[.]"

Ind.Code 32–4–1.5–3(a) provides:

> "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

Under Ind.Code 32–4–1.5–3 in the Official Comment To Uniform Probate Code,[2] the Indiana Probate Code Study Commission made the following observations:

> "This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. The assumption may be disproved by proof that a gift was intended....
>
> \* \* \* \* \* \*
>
> ... The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy."

The Commission later concluded the underlying assumption is that most persons who

---

**2.** The comment is found under West's AIC 32– 4–1.5–3.

use joint accounts want the survivor or survivors to have all balances remaining at death. The Commission further commented under Ind.Code 32–4–1.5 that the joint bank account does not qualify as a common law gift because the donor does not surrender dominion.

The evidence shows that the father was the sole depositor of funds in the joint account. By the words of the signature card itself, all funds deposited in the joint account shall be "our joint property." As the court in *Clausen, supra*, at 344, held, "if they were joint owners he could not by withdrawing the money without her knowledge or consent divest her of her joint ownership."

It is clear from the son's own testimony that his father's intent in setting up the joint account was not to "gift" the funds to his son, but rather to permit his son to withdraw funds for the father should be become ill and unable to personally withdraw the money himself. There is no other "clear and convincing evidence of a different intent," and so, as provided under Ind. Code 32–4–1.5–3(a), the whole amount of the funds in the joint account belong to the father. The signing of the signature card by the father and the son does not show an intent to make a gift by the very language of the card itself. To make a valid *inter vivos* gift there must be both an intention to give and a stripping of the donor of all dominion or control over the given thing, and a change of title must be irrevocable. *Kraus v. Kraus*, (1956) 235 Ind. 325, 132 N.E.2d 608.

We cannot infer from the testimony or the other evidence that the father's intent was to strip himself of all control of the funds and irrevocably transfer title to the account to his son. Quite the contrary, the evidence directly supports the trial court's finding that the total amount of the funds in the joint savings account "were the product of the labors of Frank R. Rogers [the father] and that said money should be returned to him ...." The *Moore* case is easily distinguishable from the case at bar for the signature card therein explicitly

stated that the funds were intended to be a gift to the other signators. Here, no such intent was expressly made either on the signature card or by the father. Therefore, we hold that the judgment of the trial court was correct.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.