Marge W. ROLLINGS, as Domiciliary Foreign Personal Representative of the Estate of Blanche Prose, Appellant–Plaintiff,

v.

Dulcia SMITH, Appellee–Defendant.

No. 84A01–9809–CV–362.

Court of Appeals of Indiana.

Sept. 22, 1999.

Brad Bough, Modesitt, Bough & Kelly, Terre Haute, Indiana, Attorney for Appellant.

John T. Roach, Mann Law Firm, Terre Haute, Indiana, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Paul Prose withdrew funds from joint bank accounts owned by him and his wife, Blanche, and deposited the funds first in his own account and then in a joint account with his niece, Dulcia Smith. When Paul died, Smith received the money. Marge W. Rollings, as Blanche's guardian, filed suit challenging those transfers. Rollings eventually moved for summary judgment and demanded the return of all transferred funds. The court granted summary judgment in favor of Rollings, but decided that Rollings was entitled to only one-half of the funds at issue. Rollings, now serving as personal representative of Blanche's estate, appeals from that decision, and Smith cross-appeals.

We reverse and remand.

### ISSUES

Rollings raises several issues, which we consolidate and restate as:

(1) Whether Rollings has designated evidence which demonstrates that she was entitled to all funds transferred.

(2) Whether Rollings is entitled to prejudgment interest.

### FACTS

Paul and Blanche Prose were married in 1945. Both were wage earners during their marriage and, around 1980, the spouses began opening the joint accounts, with rights of survivorship, which are the subject of this appeal. The couple typically renewed Certificates of Deposit upon maturity and made withdrawals only at that time.

As early as 1988, Blanche suffered periods of confusion. Because Blanche was unable to care for her own needs, on June 6, 1990, her physician suggested that she have home health care. One week later, Paul withdrew $770.80 from one of the couple's joint accounts and transferred the money into a new savings account in his name only. Two days later, Blanche moved into an assisted care facility. On June 20, 1990, Paul added Smith's name to the newly opened savings account. He also withdrew $79,382.59 from five Certificates of Deposit belonging to Blanche and him, prior to their maturity dates, and consolidated the funds into one Certificate of Deposit in his name only. Later that year, Paul transferred those funds into a Certificate of Deposit held jointly by him and Smith, with rights of survivorship. Paul died testate in November of 1991, and Smith, as the surviving joint tenant, received the proceeds from their joint accounts.

Blanche acquired nothing under the terms of Paul's probated will. Rollings, as

Blanche's guardian, filed this suit in April of 1992, naming as defendants Dulcia Smith, individually and as personal representative of Paul's estate, as well as the other beneficiaries named in Paul's will. In Count I Rollings sought to set aside Paul's will; in Count II she claimed that the inter vivos transfers were invalid;[1] and in Count III she averred that Smith had converted certain items of personal property. After Blanche elected to take against Paul's will, Counts I and III were dismissed. The case then proceeded under Count II against Smith in her individual capacity.

In November of 1995, Blanche died in Florida. In December of 1997, Rollings successfully petitioned to proceed in this action as "Domiciliary Foreign Personal Representative of the Estate of Blanche E. Prose." She also moved for summary judgment, arguing that Smith was liable for return of all funds transferred from the joint accounts, $80,153.39. In her response, Smith designated evidence and argued there were genuine issues of material fact regarding, *inter alia,* the net contributions of the spouses to the accounts and Blanche's consent to the June 1990 transfers.

Following a hearing, the court entered findings and conclusions and summary judgment in favor of Rollings for $40,076.69, one-half of the amount Rollings sought. Specifically, the court concluded that Paul had "wrongfully converted" Blanche's one-half interest in the joint account "to his own benefit" and that "Blanche's money" reached Smith "without authority or right" despite Smith's "innocence and good faith." Rollings then filed her motion to correct error and requested an award of prejudgment interest at the rate of eight (8) per cent per year, from June 20, 1990. Smith filed a separate motion to correct error claiming that the court's award was contrary to law. Both motions were deemed denied by operation of law.[2] Rollings then initiated this appeal.

## DISCUSSION AND DECISION

### Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 984 (Ind.1998). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Brunner v. Trustees of Purdue Univ.,* 702 N.E.2d 759, 760 (Ind.Ct.App.1998), *trans. denied.* This is true even if the court believes the non-moving party will not succeed at trial. *Id.*

The moving party bears the burden of proving the absence of a genuine issue of material fact. *Shell Oil,* 705 N.E.2d at 984. If the movant sustains her burden, the opponent must set forth specific facts showing that there is a genuine issue of material fact. *Id.* In reviewing the grant of summary judgment, all facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.* Special findings entered in conjunction with summary judgment aid appellate review, but are not binding on this court. *Reid.v. Ragsdale,* 702 N.E.2d 367, 369 (Ind.Ct.App.1998).[3]

### Issue One: Joint Accounts

Rollings contends that the court should have ordered Smith to return the entire amount of funds transferred from the joint

---

1. In Count II, Rollings also alleged fraud and undue influence.

2. *See* Ind. Trial Rule 53.3(A).

3. Rollings improperly contends that we must engage in a two-step review and determine first, whether the evidence supports the findings and, second, whether the findings support the judgment. This is not the applicable standard of review on appeal from an order granting summary judgment.

accounts, $80,153.39. Smith counters that she is entitled to all the funds. The parties contentions raise issues of ownership and consent to transfer.

■ Presently, ownership of joint accounts during the lives of the joint tenants is controlled by Indiana Code Section 32–4–1.5–3 which reads in part:

(a) A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

An account includes a savings account and certificate of deposit. IND.CODE § 32–4–1.5–1(1). Significantly, Indiana Code Section 32–4–1.5–3(a) does not except joint accounts owned by husband and wife. *But see* IND.CODE § 32–4–1.5–15 (spousal joint interests in personalty other than accounts). The statute creates a presumption that, during the lifetime of the parties, the proceeds in a joint account belong to the joint tenants in the proportion that they contributed to the account. *Shourek v. Stirling,* 621 N.E.2d 1107, 1110 (Ind. 1993).[4] However, the parties can rebut that presumption with clear and convincing evidence of a contrary intent. *See id.;* IND.CODE § 32–4–1.5–3. Thus, during the lifetime of the parties, proportionality of ownership is generally a question of fact.

Here, Rollings relies principally on *Clausen v. Warner,* 118 Ind.App. 340, 78 N.E.2d 551 (1948), *trans. denied,* a case in which the husband, without the wife's knowledge and consent, took a bank pass book from her, withdrew $5,500.00 from their joint account, and delivered it to his father who in turn delivered it to his mother. That same day, the husband executed a written instrument gifting the money to his mother. After the husband died, the wife sued his parents for return of the money. *Id.* at 343, 78 N.E.2d at 552. This court reasoned that "[j]oint tenants hold 'by the half and by the whole' " and that the husband was without power to dispose of his wife's one-half interest in the funds on deposit. *Id.* at 344, 78 N.E.2d at 552. We then held that, because the parents had received the wife's one-half share with knowledge that their son was without right to give it to them, they were liable for its return. *Id.* at 345, 78 N.E.2d at 552.

*Clausen* does not support Rollings' contention that the entire amount transferred belongs to her. In fact, *Clausen* does not compel the result reached in this summary judgment proceeding, i.e., that Rollings should receive one-half of the transferred funds. First, *Clausen* was not decided in the context of summary judgment. Further, the decision predates enactment of the Non–Probate Transfers Act which became effective January 1, 1977. *Matter of Estate of Banko,* 622 N.E.2d 476, 480 (Ind. 1993); *see* IND.CODE §§ 32–4–1.5–1 to –15.

■ Here, Rollings had the initial burden of showing the absence of a genuine

---

4. The Official Comment to the Uniform Probate Code, cited by the Indiana Probate Code Study Commission following Indiana Code Section 32–4–1.5–3, reads:

This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. The assumption may be disproved by proof that a gift was intended.... Presumably, over-withdrawal leaves the party making the excessive withdrawal liable to the beneficial owner as a debtor or trustee. Of course, evidence of intention by one to make a gift

to the other of any sums withdrawn by the other in excess of his ownership should be effective.

\* \* \* \* \*

The theory of these sections is that the basic relationship of the parties is that of individual own[er]ship of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy. ·

*See Shourek,* 621 N.E.2d at 1109–10.

issue of fact concerning Blanche's ownership interest in the joint accounts in June of 1990 when Paul "converted" the funds. However, the trial court found, "[T]here is no evidence as to how much either Paul or Blanche contributed to fund these original accounts." We agree that Rollings did not designate evidence regarding each spouse's actual net contributions to the joint accounts. Nor did Rollings resolve the related question of the spouses' intentions regarding ownership of the accounts. Hence, she did not meet her burden in this summary judgment proceeding.

■ We recognize that both principals are now deceased, and proof of their net contributions and their intentions with any degree of certainty may not be possible.[5] However, summary judgment should not be used as an abbreviated trial, even where the proof is difficult. *See Watters v. Dinn*, 633 N.E.2d 280, 285 (Ind.Ct.App. 1994), *trans. denied.* The parties in this case should be given the opportunity to develop the record fully, permitting the court to weigh the evidence and judge the credibility of witnesses. To the extent that net contributions cannot be proven, absent clear and convincing evidence of contrary intent, "[u]ndoubtedly a court would divide the account equally among the parties" as a matter of law. Official Comment to Uniform Probate Code (cited by Indiana Probate Code Study Commission following IND.CODE § 32–4–1.5–3).

■ Rollings also argues that the evidence indicates Blanche did not consent to Paul's withdrawals and transfers or, in the alternative, that Blanche was incompetent to do so. Rollings is correct that one of

two joint tenants of money deposited in a joint bank account cannot, by withdrawing the money without the other's knowledge and consent, divest the other of his ownership interest. *Rogers v. Rogers*, 437 N.E.2d 92, 96 (Ind.Ct.App.1982). However, as the movant in this summary judgment proceeding, Rollings was required to designate evidence showing there was no factual dispute concerning the challenged transfers. Rollings' argument on appeal reflects her failure to meet her initial burden on that issue. Our conclusion is consistent with the trial court's finding that "there is no evidence, that Blanche did or did not know of these transactions nor was there any evidence that she did or did not consent to the transactions."[6]

Because there are factual issues for trial, summary judgment was improperly entered. We emphasize that our determination is compelled by the procedural posture of this case. It is quite possible that, after an evidentiary hearing, the court will reach the same result. However, in the context of summary judgment, the court improperly resolved dispositive factual issues. Accordingly, we reverse the entry of summary judgment in favor of Rollings.

### Issue Two: Prejudgment Interest

Rollings also asserts that the court erred when it declined to award prejudgment interest. In light of our disposition of the above issue, Rollings' assertion is premature. However, we consider the question in order to provide guidance to the trial court on remand. *See Irvine v. Irvine*, 685 N.E.2d 67, 71 (Ind.Ct.App. 1997) (court considered issues not disposi-

---

5. Neither party cites the following language, found on several of the relevant signature cards:

   It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties *are and shall be conclusively intended to be a gift and delivery* at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account.

*See Moore v. Bowyer*, 180 Ind.App. 429, 388 N.E.2d 611 (1979), *trans. denied.*

6. We acknowledge that, in this review of the grant of summary judgment, we may not rely on the court's finding, but must instead base our decision on the materials properly presented to the trial court. *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 874 (Ind.Ct.App. 1998), *trans. denied.*

tive of appeal but likely to appear on remand); *Brant v. Custom Design Constructors Corp.*, 677 N.E.2d 92, 100 (Ind.Ct.App. 1997) (same).

The legislature has determined that a court may award prejudgment interest as part of the judgment in a civil action arising out of tortious conduct. IND.CODE § 34–51–4–1 to –9. Even if the court were to find that Smith is a tortfeasor, however, Rollings is not entitled to prejudgment interest under those statutes because she did not make a timely offer of settlement. *See* IND.CODE § 34–51–4–6. Nor does her complaint sound in breach of contract. *See Indiana Erectors, Inc. v. Trustees of Indiana Univ.*, 686 N.E.2d 878, 882 (Ind. Ct.App.1997) (under common law, Indiana courts have permitted awards of prejudgment interest as component of contract damages).

■■■ In Count II of her complaint, Rollings asks that the inter vivos transfers be declared invalid and that Smith be required to account for those transfers. In this part of her prayer for relief, Rollings seeks an equitable remedy. Restitution is described as "a return or restoration of what the defendant has gained in a transaction." 1 DAN B. DOBBS, LAW OF REMEDIES § 4.1(1), at 551 (2nd ed.1993). As distinct from damages, restitution is an award made to remedy defendant's unjust enrichment rather than plaintiff's loss. *Id.* § 3.6(2), at 343.[7] Stated differently, restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. *Id.* § 4.1(1), at 555. An action to compel a restitution of benefits accrued need not be founded upon any supposed wrong. *See Reese v. Reese*, 696 N.E.2d 460, 463 (Ind.Ct.App.1998) (quoting *Thompson v. Reasoner*, 122 Ind. 454, 458–59, 24 N.E. 223, 225 (1890)).

If Rollings ultimately prevails on remand, Smith can be required to make restitution for any benefit she may have re-

ceived from the funds. *See Dobbs* § 3.6(2), at 342–43. Where money is involved, the value of a benefit received is sometimes measured by interest. *See id.* § 4.5(2), at 636. But prejudgment interest may or may not be appropriate under these circumstances. Restitution may also be accomplished by return of the asset together with any actual accrual, earnings or appreciation thereon. Where the defendant is not a wrongdoer, she is generally not liable except for enrichment actually realized. *Id.* at 632. The remedy of restitution can take many forms, *see id.* § 4.5(1), at 628–29, and should be granted as justice requires.

### Conclusion

Because factual issues remain, the trial court improperly entered summary judgment in favor of Rollings. We reverse that decision and remand the case for further proceedings. If Rollings prevails on remand, the court should determine the amount of restitution to which she is entitled.

Reversed and remanded for further proceedings consistent with this opinion.

GARRARD, J., and KIRSCH, J., concur.

---

7. Although restitution differs from damages, the two remedies can produce the same result in some situations. *Id.* § 4.1(1), at 555.