## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 03 2017, 8:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew A. Griffith
Griffith Law Group, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Kent M. Frandsen
Parr Richey Obremsky Frandsen &
Patterson LLP
Lebanon, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kansas City Services, Inc., <br><br> *Appellant-Plaintiff,* <br><br> *v.* <br><br> Bryan Connan,[1] Julie Connan, and Connan's Zionsville Investors, LLC, <br><br> *Appellees-Defendants.* | February 3, 2017 <br><br> Court of Appeals Case No. 06A01-1606-PL-1274 <br><br> Appeal from the Boone Superior Court <br><br> The Honorable Matthew C. Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1310-PL-557 |

**Bradford, Judge.**

---

[1] This appellee is variously referred to in the record and the parties' briefing as "Brian" or "Bryan." The Brief of Appellees, however, identifies him as "Bryan Connan," which we shall assume is the correct spelling.

# Case Summary

[1] Appellant-Plaintiff Kansas City Services, Inc. ("KCS"), appeals from the trial court's ruling on its restitution claim against Appellees-Defendants Bryan Connan, Julie Connan, and Connan's Zionsville Investors, LLC ("CZI"). In 2002, Bryan and Julie owned a commercial building in Zionsville ("the Property") and entered into a land contract to sell it to William Rabb. By late 2008, payments on the land contract were $2500.00 per month, the Connans had transferred the Property to CZI, and Rabb was delinquent. Rabb brought his father-in-law John Petrowski, the owner of KCS, to a meeting with Bryan. KCS began making payments on the land contract in 2009 and entered into communications with Bryan to purchase the Property. Although the parties ultimately were not able to reach an agreement to sell KCS the Property, KCS continued payments until April of 2013, totaling over $140,000.00 altogether.

[2] On October 25, 2013, KCS filed a complaint against the Connans and CZI for breach of contract, conversion, and unjust enrichment. CZI counterclaimed for breach of contract and foreclosure against KCS. CZI also filed a complaint for foreclosure against Rabb. On October of 2014, CZI obtained a default judgment of foreclosure against Rabb. On January 21, 2015, the trial court determined that no contract for the sale of the Property had been formed between KCS and CZI and that KCS was not entitled to recover on a theory of unjust enrichment because CZI had conferred a benefit of foregoing foreclosure upon Rabb for four years and Petrowski had hoped to preserve the Property for his children. On appeal, we affirmed the trial court's determination that no

sales contract had been formed, reversed the conclusion that KCS could not recover for unjust enrichment, and remanded for a restitution hearing. The trial court concluded that KCS was entitled to approximately $22,000.00 in restitution. KCS appeals, contending that the trial court erred in (1) setting its restitution award at anything less than the amount it paid on the sales contract, (2) calculating interest, and (3) not ruling that the Connans were personally liable for restitution. CZI contends that the trial court's award of restitution is proper and that KCS failed to establish that the Connans should be personally liable for restitution but acknowledge that the trial made an error in calculating interest on the restitution award. We affirm the trial court's ruling on the base amount of restitution and agree that KCS has not shown that piercing the corporate veil is warranted but remand for the entry of an updated award of interest in the amount of $4409.33.

# Facts and Procedural History

[3] The underlying facts of this case were outlined, in part, by our disposition of a previous appeal in this case:

> [3] On January 29, 2002, the Connans and William Rabb ("Rabb") executed a land contract whereby Rabb agreed to pay the Connans $218,000.00 for real property located at 95 East Pine in Zionsville ("the Property"). Rabb tendered a down payment of $10,000.00 and promised to make monthly payments of $1,383.83 for sixty months and a balloon payment thereafter.
>
> [4] On April 1, 2007, the Connans and Rabb executed an Addendum to Purchase Agreement, changing the purchase price

to $195,000.00 and the installment payments to $2,500.00. On January 30, 2008, the Connans quit-claimed their interest in the Property to CZI.

[5] In December of 2008, Rabb met with Bryan Connan and advised Connan that his father-in-law, John Petrowski ("Petrowski"), "would start making the payments for [Rabb]." Petrowski owns KCS, a real estate investment company.

[6] On February 6, 2009, Petrowski, as an authorized signer, issued a KCS check to CZI in the amount of $4,943.55. The Memo portion of the check reflected that the payment was "Dn Pmt. Bldg 95 E Pine, Zionsville, Ind 46077." KCS began to make monthly payments of $2,500.00 to CZI. [Although attempts to negotiate a sales contract for the Property were ultimately unsuccessful, KCS continued monthly payments until April of 2013].

….

[11] In 2011, the Property was damaged when a water pipe burst…. Petrowski proposed to [Bryan] that Indiana Insurance Company "needs to be involved" and expressed willingness to join Connan in pursuing recovery from Indianapolis Water "legally to protect our financial interest in the building." [Bryan] received an insurance check in the amount of $15,000.00. No repairs were performed.

….

[14] On October 25, 2013, KCS filed a complaint against the Connans and CZI for breach of contract, conversion, and unjust enrichment. On December 16, 2013, CZI counterclaimed for breach of contract and foreclosure against KCS. CZI also filed a complaint for foreclosure against Rabb. On October of 2014, CZI obtained a default judgment of foreclosure against Rabb.

….

[16] On January 21, 2015, the trial court entered its findings of fact, conclusions of law, and judgment. In relevant part, the trial court determined that no contract for the sale of the Property had been formed. The trial court found that KCS was not entitled to recover on a theory of unjust enrichment because CZI had conferred a benefit of foregoing foreclosure upon Rabb for four years and Petrowski had hoped to preserve the Property for his children. CZI prevailed upon its counterclaim and was granted relief from the cloud on its title relative to KCS's equitable interest affidavit. In sum, CZI and the Connans retained possession of the Property with clear title, insurance proceeds, a judgment against Rabb, and all sums paid by KCS.

*Kansas City Servs., Inc. v. Connan*, Cause No. 06A04-1502-PL-66, slip op. at 1-3 (Ind. Ct. App. 2015) (footnotes and record citations omitted).

[4] KCS appealed, alleging that the trial court erred in failing to find that a contract for the sale of real estate existed between KCS and CZI and in determining that KCS could not recover on a theory of unjust enrichment. *Id.* at 1. We affirmed the trial court's ruling that no contract existed between KCS and CZI but remanded for a hearing on the proper amount of restitution to be paid to KCS. *Id.* at 5.

[5] On March 23, 2016, the trial court held a hearing on the question of restitution, at which Bryan testified. Bryan testified that neither KCS nor Petrowski ever informed him that if KCS were not given its own purchase contract for the Property, it would seek to have all of its payments returned. Bryan estimated that the reasonable market commercial rental value of the Property in 2009 was approximately $1500.00 per month, but that Rabb's company continued to occupy the Property preventing the collection of rent from another tenant.

According to Bryan, he believed that Petrowski/KCS was taking over Rabb's purchase contact and its balance when KCS began payments. When the Property was water-damaged, Bryan testified that he did not repair or re-rent the Property because he did not have possession of it and was still receiving payments on it.

[6]    On May 19, 2016, the trial court issued its judgment on remand on KCS's restitution claim, which reads, in part, as follows:

FINDINGS OF FACT

1.    Between January 2002 and January 2008 Bryan R. Connan and Julie Connan, husband and wife (the "Connans"), owned a commercial building located at 95 East Pine Street, Zionsville (the "Building").

2.    In January 2002, the Connans entered into a land contract to sell the Building to William J. Rabb ("Rabb") for the price of $218,000 with monthly payments over a five year term and a balloon payment due in February 2007. The purchaser was required to keep the Building insured, maintained and the utilities paid.

3.    In April 2007, the Connans and Rabb executed an addendum to the contract reflecting a reduced principal balance of $195,000, payments of $2,500 a month and extending the date for Rabb's balloon payment to Mach 2012.

4.    In January 2008, the Connans conveyed by quitclaim deed ownership of the Building to CZI, an Indiana liability entity of which they are the sole members.

5.    Around Christmas 2008, Rabb was delinquent in his contract payments and he brought John Petrowski, the owner of Kansas City Services, Inc. ("KCS"), to a meeting with Bryan Connan. Thereafter, communications occurred between [Bryan]

and KCS regarding KCS's desire to purchase the Building from CZI.

6. After the meeting between KCS and [Bryan], Rabb made no further payments on his contract. However, Rabb's business furnishings, inventory and equipment remained in the Building until the time of the January 2015 trial.

7. Beginning in February 2009 through April 2013 KCS made approximately fifty-five payments by check payable to CZI for $2,500 each. Including an initial catch-up payment and some taxes installments, KCS paid CZI the total sum of $142,065.

8. KCS presumed its payments to CZI were being applied toward its intended purchase of the Building.

9. CZI received and deposited those payments in its company bank account. None of the money has gone to Bryan or Julie Connan personally.

10. CZI thought the KCS payments were being made pursuant to Rabb's purchase contract and were applied to that contract, and CZI would have conveyed clear title to Rabb and/or KCS had that contract been fulfilled.

11. In the Summer of 2009, CZI made it clear that any contract with KCS would have to be guaranteed by Petrowski personally; KCS refused but it continued making the $2,500 monthly payments.

12. KCS ceased making payments to CZI in May 2013 and later that year filed this lawsuit against CZI and the Connans.

13. As confirmed by the Court of Appeals, CZI and KCS did not reach a meeting of the minds on all material terms of an agreement. No enforceable contract was ever formed between KCS and CZI.

14. In October 2013 Connans obtained a default judgment of forfeiture thereby vacating Rabb's interests in the Building.

15. However, until November 2015, KCS continued to contend in this Court and on appeal that it had an enforceable right to purchase the Building. The pendency of that claim

prevented CZI from being able to take possession of the Building and sell or lease it.

16. In reliance on KCS's continuing payments between February 2009 and April 2013, CZI allowed Rabb to remain in possession of the Building. CZI did not seek to terminate whatever KCS's rights until after the payments had stopped.

17. Between 2009 and 2015, the fair market rental value of the Building on a triple net basis was between $1,500 and $1,800 a month. (KCS Exh. 54; [Bryan] testimony) Taking the mid-point of that monthly rental range from February 2009 through November 2015 yields a total rental loss to CZI since February 2009 of $132,000, not including interest thereon.

18. CZI would have removed Rabb and retaken possession of the Building in early 2009 and rented it for fair value in the marketplace thereafter had CZI known that KCS would seek to recover the payments it made to CZI.

19. A big part of this misunderstanding was that KCS did not make clear to CZI its intended course of action if its own contract was not formed. Had it informed CZI that reimbursement of its payments would be sought if a contract was not reached, CZI would have either reached agreement with KCS or declared a forfeiture, reclaimed possession of the Building, and mitigated its loss. KCS never gave CZI adequate notice; instead, it knowingly allowed CZI to forego its rights and remedies against Rabb. In fact, KCS's own pleadings merely sought to enforce a contract; they make no mention of an alternative claim for restitution.

19. Sometime in later 2009 and 2011, the Building sustained extensive interior water damage from frozen pipes because the utilities had been disconnected. That condition was not immediately discovered and it resulted in significant mold damage.

20. The parties stipulated at trial that because of the water and mold damage the fair market value of the Building at the time of trial was only $60,000. This is a $140,000 reduction in value from the Building's roughly $200,000 value in early 2009.

21      CZI's financial position was materially harmed both by the loss of $132,000 in rental income from the Building and $140,000 in diminished from the time of contracting to the current date.  Either of these elements approaches KCS's payments of $142,000.

22.     By reason of the water damage, CZI recovered the sum of $15,000 under a casualty policy it purchased and paid for. That was the full extent of coverage for water damage.  The money has been retained by CZI.

23.     The market rate of interest since 2009 has [been] at three percent (3%) or less.  There is no evidence that CZI earned more than that on the money or that KCS could have earned a greater rate of return than 3%.

24.     If KCS is entitled to recover pre-judgment interest on its payments since February 2009, the calculation is complicated because of the somewhat varying payments over time.  The amount can be reasonably approximated by taking the mid-point of $142,000 ($71,000) x 3% per year = $2,130 per year calculated from the mid-point of the payment stream (March 2011) though the present date.  That is $2,310 / yr x seven years (February 2009 through March 2016) = $15,000.

35.     No factual basis has been presented for any personal liability of defendants Bryan or Julie Connan.  By the time of its first payment in February 2009, KCS was on notice that CZI owned the Building.  All of KCS's payments were made payable to CZI, and it retains the funds in its company account.  No testimony or exhibits suggest any commitment made or obligation undertaken by either [Bryan] individually.

CONCLUSIONS OF LAW

1.      A restitution action for unjust enrichment seeks a remedy based in equity.  *Troutwine Estates Dev. Co., LLC v. Comsub Design and Eng'g, Inc.,* 854 N.E.2d 890, 897 (Ind. Ct. App. 2006), *trans. denied.*

2.  The objective of an unjust enrichment award is not to calculate the amount of the plaintiff's loss, but rather to determine the extent to which a defendant has been enriched.

3.  As distinct from compensatory damages, restitution remedies a defendant's unjust enrichment rather than a plaintiff's loss.  Restitution measures the extent of the defendant's gain and seeks to disgorge that gain. *Rollings v. Smith,* 716 N.E.2d 502, 507 (Ind. Ct. App. 1999).

4.  Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, <u>whichever is less</u>.  RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT, Sec. 49(2). [Emphasis added]

5.  If receipt of a benefit has led a recipient, such as CZI, without notice, to change position in such a manner that an obligation to make restitution of the original benefit would be inequitable to the recipient, the liability in restitution is to that extent reduced.  CZI did not have notice of KCS's intent to seek restitution if a contract was not informed and its liability in restitution should be thereby reduced.

6.  Under these established principles of unjust enrichment, despite receiving KCS's, $142,065, this exchange cannot be viewed in isolation.  It doesn't reflect added value to CZI.  If CZI had merely rented the Building to Rabb or KCS it would have earned $1,500-1,800 a month and retained ownership of a building worth over $200,000.  Instead it regains property diminished by $140,000 in value, recovers no rental income, and is asked to reimburse KCS for all of its payments plus interest.  That is not an equitable result here.

7.  KCS has failed to carry its burden of proof that Bryan and/or Julie Connan have any personal indebtedness to KCS.

JUDGMENT ENTRY

Consistent with the above findings and conclusions, the Court now enters judgment in favor of plaintiff Kansas City

Services, Inc., against defendant Connan's Zionsville Investors, LLC, in the sum of $22,708.04. Judgment is entered in favor of Bryan R. Connan and Julie Connan on plaintiff's claim.

Appellant's App. pp. 39-45. The trial court clarified in a note issued on May 25, 2016, that the restitution amount represented the $142,046.65 received by CZI from KCS offset by rent of $1500.00 per month from 2009 to 2015 that CZI did not collect but could have, according to Bryan's testimony. To this total of $22,046.65 the trial court added interest of six percent on the average balance of KCS's money for the period in question, interest which it calculated at $661.39.

# Discussion and Decision

[7] The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52.

> When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. "First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law." *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind. 1994) (citation omitted). Findings will only be set aside if they are clearly erroneous. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id*. (citation omitted). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *State v. Van Cleave*, 674 N.E.2d 1293, 1296 (Ind. 1996), *reh'g granted in part*, 681 N.E.2d 181 (Ind. 1997). In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the

evidence must leave it with the firm conviction that a mistake has been made. *Id.* at 1295.

*Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997).

# I. Amount of Restitution for Unjust Enrichment

[8] The trial court found that KCS was entitled to $22,046.65 in base restitution. KCS contends that the trial court erred in awarding anything less than the $142,046.65 that it paid toward the Property, plus eight percent annual interest.

> A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery … where the circumstances are such that under the law of natural and immutable justice there should be a recovery…" *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (citation omitted). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." RESTATEMENT OF RESTITUTION § 1 (1937). To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Bayh*, 573 N.E.2d at 408.

*Zoeller v. E. Chicago 2nd Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009).

> Restitution is described as "a return or restoration of what the defendant has gained in a transaction." 1 DAN B. DOBBS, LAW OF REMEDIES § 4.1(1), t 551 (2nd ed. 1993). As distinct from damages, restitution is an award made to remedy defendant's unjust enrichment rather than plaintiff's loss. *Id.* § 3.6(2), at 343. Stated differently, restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. *Id.* § 4.1(1), at 555.

*Rollings v. Smith*, 716 N.E.2d 502, 507 (Ind. Ct. App. 1999) (footnote omitted).

[9] KCS's argument is that the amount of its restitution must necessarily be the entire amount it paid to CZI. KCS cites to no authority for this proposition, and we are aware of none. Moreover, we agree with CZI that, had we previously determined that KCS was entitled to be repaid all of the money it paid to CZI, there would have been no need to remand for a hearing on the question.

[10] That said, KCS has failed to convince us that the trial court's disposition is unjust. Although KCS paid on the original land contract for several years, it is incorrect to assert, as KCS does, that it got nothing for its payments. A reasonable inference can be drawn that, at least initially, KCS paid on Rabb's land contract to protect the interests of Rabb and Rabb's wife, who actually ran the business operating on the Property, and continued payment guaranteed continued possession and control of the Property. If that possession and control was not profitably exercised (whether by Rabb, Rabb's wife, or KCS), that is hardly CZI's fault. Even though KCS's payments did not result in ownership of the Property, it was not at all unreasonable to at least charge KCS "rent" for the period it was paying on the land contract, which is essentially what the trial court's order does.

[11] Bryan testified that the fair rental value of the Property in 2009 was $1500.00 per month, a figure confirmed by KCS's appraiser. Looked at from CZI's perspective, it was not unreasonable to conclude that it was entitled to rent for the period of time the Property was possessed by Rabb. It is also not unreasonable, however, to conclude that CZI was *not* entitled to keep the larger

payments on the land contract because the Property was, in fact, never sold. The trial court's order struck that particular balance. KCS has not established that the trial court's order of base restitution in the amount of $22,046.65 was inequitable.[2]

# II. Pre-Judgment Interest

[12] KCS contends that the trial court also abused its discretion in not awarding it the $72,000.00 in pre-judgment interest it requested. Indiana Code section 34-51-4-7 provides that "[t]he court may award prejudgment interest as part of a judgment." Indiana Code section 34-51-4-9 provides that "[t]he court shall compute the prejudgment interest at the simple rate of interest determined by the court. The rate set by the court may not be less than six percent (6%) per year and not more than ten percent (10%) per year."

> The prejudgment interest statute permits the trial court to award prejudgment interest, but does not require an award of prejudgment interest. We review a trial court's ruling on a motion for prejudgment interest under the prejudgment interest statute for an abuse of discretion. [*Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1208 (Ind. 2012)]. The trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before it." *Turner v. State,* 953 N.E.2d 1039, 1045 (Ind. 2011). The prejudgment interest statute grants the trial court "broad discretion to

---

[2]  It is worth noting that the trial court's restitution order does not take into account the significant water damage to the Property that occurred when it was not in CZI's possession and the utilities were allowed to be turned off.

determine when an award of prejudgment interest is warranted." [*Inman,* 981 N.E.2d at 1208].

*Alsheik v. Guerrero*, 979 N.E.2d 151, 155 (Ind. 2012) (some citations omitted).

[13] As an initial matter, KCS's requested award of pre-judgment interest is based on restitution of some $142,000.00, to which we have already ruled it is not entitled. We also disagree with KCS's contention that it is entitled to eight percent pre-judgment interest, apparently compounded monthly. The trial court's order of six percent is within the statutory range, and KCS does not explain why it is entitled to more. Moreover, Indiana Code section 34-51-4-9 makes it clear that interest will be "at the *simple rate of interest* determined by the court." (Emphasis added).

[14] That said, CZI concedes that the trial court was within its discretion to order that pre-judgment interest be paid on the $22,046.65 restitution award at six percent simple interest. CZI also acknowledges that the trial court made an error in calculating the interest, which it determined to be $661.39 for an eighty-month period of unjust enrichment. It is apparent that this amount represents six percent interest on the principal for only one year of the unjust enrichment period of six and two-thirds years. The correct amount of simple interest for the period in question is $4409.33.[3]

---

[3] This amount is calculated by simply multiplying the interest for one year by six and two-thirds.

[15]     KCS spends the bulk of its argument on its contention that the trial court essentially allowed CZI to retry the case during the restitution proceeding. KCS points out that the restitution hearing should have been limited to determining the appropriate amount of restitution. We conclude that, contrary to KCS's claims, this was, in fact, the case. Without going into most of KCS's contentions in detail, they seem to all be based on the false premise that it is automatically entitled to restitution equal to the total amount paid on the land contract. If this were true, then much of the evidence presented at the hearing would indeed have been irrelevant. Because it is not, however, evidence related to fair market rent for the Property for the time period in question, etc., is relevant. Suffice to say that our reading of the record is that: (1) the evidence admitted at the restitution hearing was relevant to the amount of restitution and (2) the question of whether a sales contract existed between KCS and CZI was not revisited.

[16]     KCS specifically focuses on what it claims was the trial court allowing CZI to introduce evidence that Bryan believed KCS was making payments on Rabb's land contract on Rabb's behalf. Even if we assume that the trial court did allow such evidence, we do not see how Bryan's beliefs about KCS's motives were relevant. Whether KCS's payments were made on Rabb's behalf or with an intent to purchase the Property for itself, Bryan testified that CZI did not foreclose on the Property because payments were still being made; the motivation for those payments does not seem particularly relevant. Finally, the evidence relied upon by the trial court to determine restitution had nothing to

do with whether a real estate contract existed between KCS and CZI. What it boils down to is that the trial court's ruling was based on (1) the amount KCS paid over the years and (2) the amount of rent CZI could have collected had it foreclosed in 2009. The evidence related to these two questions has nothing to do with revisiting the question of whether KCS and CZI formed a valid real estate contract. KCS has not established that the trial court allowed CZI to "retry" the case.

## IV. Personal Liability for Restitution

[17] KCS argues that the trial court should have ordered Bryan and Julie personally liable for restitution, in addition to CZI.

> While an Indiana court will impose personal liability to protect innocent third parties from fraud or injustice, the burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice.

*Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994).

[18] We conclude that KCS has wholly failed to carry their burden in this regard. At the restitution hearing, although KCS argued that Bryan, Julie, and CZI benefitted from the payments KCS made, it presented no evidence whatsoever that CZI's corporate form was so ignored, controlled, or manipulated so as to constitute a fraud or promote injustice. Aside from the fact that it was not explicitly asked to do so, the trial court did not err in failing to hold Bryan and Julie personally liable for CZI's restitution payment to KCS.

[19] We affirm the judgment of the trial court in part and remand with instructions to order restitution in the amount of $22,046.65 plus interest of $4,409.33 for a total award of $26,455.98.

Vaidik, C.J., and Brown, J., concur.